Richard DELOACH, Plaintiff–Appellee,
Cross–Appellant,

v.

DELCHAMPS, INC.,
Defendant–Appellant,
Cross–Appellee.

Richard DELOACH, Plaintiff–Appellant,

v.

DELCHAMPS, INC.,
Defendant–Appellee.

Nos. 89–4157, 89–4708.

United States Court of Appeals,
Fifth Circuit.

April 6, 1990.

William C. Tidwell, III, Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., Joel E. Gooch, Allen, Gooch, Bourgeois, Breaux & Robinson, Lafayette, La., for defendant-appellant, cross-appellee.

Sue Fontenot, Abbeville, La., Anthony D. Moroux, Moroux, Domengeaux & Davis, Lafayette, La., for plaintiff-appellee, cross-appellant.

Before GEE, REAVLEY and GARWOOD, Circuit Judges.

REAVLEY, Circuit Judge:

Defendant Delchamps, Inc. ("Delchamps") appeals the denial of its motion for a new trial after a jury found that it had discharged plaintiff Richard Deloach, a former employee, in violation of the Louisiana Age Discrimination in Employment Act ("LADEA"). La.Rev.Stat.Ann. §§ 23:971–:975 (West 1985 & Supp.1990). Delchamps also appeals the award of front pay. Plaintiff cross-appealed the denial of general and liquidated damages and the denial of attorney's fees. Deciding the district court did not abuse its discretion in denying the motion for a new trial, we affirm the award of back pay. Deciding an award of front pay appropriate, but the specific amount unsupported, we remand on that issue. The denial of general and liquidated damages and attorney's fees is affirmed.

## Background

Delchamps operates retail grocery stores. Each store is under the direct supervision of a Store Manager. The stores are organized into areas and are supervised by Area Supervisors. The areas are organized into zones, which are supervised by Zone Managers.

In 1958, at the age of nineteen, Deloach began working for Delchamps as a stock clerk. Over approximately the next nine years, he rose through the ranks to become a Store Manager. He managed a store in Alabama for eleven years and then relocated to Lafayette, Louisiana where he ultimately opened two new stores. In 1981, Deloach was promoted to Area Supervisor.

In that position he continued to supervise several existing stores in Louisiana and the opening of new stores. In 1986, Emmett Easterling was promoted from Louisiana Zone Manager to Director of Supermarket Operations. Although Deloach was the most senior Area Supervisor in Louisiana, the Zone Manager position was awarded to Richard Pridgen, who was fifteen years younger than Deloach and had three years less experience as an Area Supervisor. Eight weeks after Pridgen was promoted, he recommended to Easterling that Deloach be fired for "ineffective job performance." Easterling concurred in the decision and obtained further approval from Mack Rhodes, the Vice–President of Operations. Deloach was discharged on June 16, 1986. At that time he was forty-seven years old, had worked for Delchamps twenty-eight years, and had two years until his pension would vest. Deloach was replaced by William Fairchilds, who was thirty-two years old. Deloach immediately found other employment with a grocery wholesaler, although at reduced pay and benefits.

Deloach originally brought a wrongful discharge suit, which was dismissed with prejudice. He then brought this diversity action, claiming that he had been discharged in violation of the LADEA. He subsequently filed an amended complaint adding additional claims for, among other things, general and liquidated damages. All the added claims were dismissed and the case was tried to a jury. The district court determined that the amount of front pay presented an equitable issue for the court to decide, but submitted it to the jury in an advisory capacity.

The jury found that age was a determinative factor in Deloach's discharge and that he was entitled to $46,500 in back pay and $494,000 in front pay. The court then found that Deloach was entitled to no more than five years front pay and determined that he would be adequately compensated with $215,000. On November 17, 1988, judgment was entered for the plaintiff, awarding him $46,500 in back pay and $215,000 in front pay.[1] The judgment addi-

---

1. The November 17 judgment was later vacated and amended to provide that Deloach was enti-

tionally stated that Deloach was entitled to attorney's fees in an amount that would be determined subsequently.

Delchamps' post-trial motions to vacate the jury verdict and to grant a new trial or in the alternative to grant conditionally a new trial on the issue of front pay were denied. Delchamps appealed and Deloach cross-appealed. In later proceedings to determine the award of attorney's fees, the district court noted that there may not be a statutory basis for awarding attorney's fees and requested briefing on that issue. On August 11, 1989, a Memorandum Ruling was issued, denying Deloach attorney's fees. A final judgment based upon that Memorandum was entered on September 13, from which Deloach appeals. The two appeals have been consolidated.

## Discussion

Although this case was brought pursuant to the LADEA, there is little case law offering interpretive guidance for that statute. However, because the Louisiana statute is essentially patterned after the federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA"), we have looked to federal precedent when appropriate.

## I. Age Discrimination

■ Disparate treatment cases, such as this, are analyzed under the test developed for Title VII plaintiffs in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *See, e.g., Thornbrough v. Columbus & G.R.R.*, 760 F.2d 633, 638–39 (5th Cir.1985). Under *McDonnell Douglas*, a plaintiff creates a rebuttable presumption of discrimination by establishing a prima facie case. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). A prima facie case of employment discrimination based on age requires showing: (1) that the plaintiff is between forty and seventy years of age, *see* La.Rev.Stat.Ann.

§ 23:972 G (West 1985); (2) that he was qualified for the job at issue; and (3) that an employee outside the protected class was treated more favorably. *See, e.g., McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Thornbrough*, 760 F.2d at 638–39.

■ An employer may rebut that presumption by articulating some legitimate, nondiscriminatory reason for its action. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. If an employer carries that burden, the plaintiff may establish discrimination by showing that the reason is merely pretextual and that age was a determinative reason for the employer's action. *Id.* at 256, 101 S.Ct. at 1095; *Laurence v. Chevron, U.S.A., Inc.*, 885 F.2d 280, 283 (5th Cir. 1989).

### A. Evidence

■ The parties do not dispute that Deloach established a prima facie case of employment discrimination based on age. Delchamps argues, however, that the great weight of the evidence demonstrates that Deloach was terminated for legitimate reasons and that age was not a determinative factor in his discharge.

Deloach was officially terminated for "ineffective job performance." The specific problems stemmed from an alleged inability to give his subordinates the leadership, direction, and development they needed. According to his supervisors, Deloach was unable to select and train managers sufficiently to ensure that Delchamps' policies and procedures would be implemented. They also claimed that his employees were losing confidence in him because he was not responsive to their complaints and that he was unable to discipline managers who did not keep clean, well-stocked stores. Consequently, they claimed that the stores he managed were poorly organized and that he was unable to control overtime costs and grocery shrink.[2] To support

tled to legal interest on the back pay award from September 14, 1987, rather than from June 12, 1988 as the original judgment provided.

2. Shrink values reflect the percentage of merchandise the store has purchased that becomes unavailable for sale due to problems such as theft and spoilage. It is a controllable cost in

these claims, Delchamps presented the testimony of the three supervisors who had concurred in the termination decision, Mack Rhodes, Richard Pridgen, and Emmett Easterling. Each verified the reasons offered for termination and denied considering age as a factor in any of the relevant employment decisions. Delchamps also offered seven supervisory reports written by Easterling describing Deloach's faulty performance and one report written by Pridgen reflecting the same problems. Additionally, Delchamps presented several witnesses who testified to the poor conditions in the stores that Deloach supervised and the difficulty they had in getting Deloach to respond to their complaints. Several witnesses also testified that both store conditions and responsiveness improved dramatically following Deloach's replacement.

The decision to terminate apparently originated with Pridgen, who testified that the decision was based upon his personal view of the conditions in Deloach's stores and the previous reports that had been written by Easterling. Under the Store Managers Operations Manual, which Pridgen conceded applied to higher supervisory personnel, an employee who is to be discharged for violating company policy should be informed of the violation and suspended, pending investigation and review of the violation. Additionally, although Rhodes, Easterling, and Pridgen apparently had differing views on exactly how supervisory reports were to be used, their testimony indicated that reports generally are used as training tools rather than disciplinary tools. Rhodes testified that employees should always be given copies and Pridgen testified that he would only have an employee sign a supervisory report if it involved serious problems.

To show that Delchamps' reasons were pretextual, Deloach pointed out several irregularities in the circumstances regarding his discharge. Deloach noted that only two of the supervisory reports were signed. He testified that he had never been told that five of Easterling's reports were being written, that Easterling had required him

to sign one of the reports without providing him an opportunity to read it, that Pridgen never told him of the report he had written, and that he was not aware that his job was in danger at the time he was discharged. Deloach testified that he received the last written report in July 1985. Although it stated that "[f]ailure to correct the subject brought to your attention will result in termination from this company," Deloach pointed out that he received that report almost one year prior to his discharge.

As Zone Manager, Pridgen was responsible for forty-two stores in Louisiana. Pridgen terminated Deloach eight weeks after he became Zone Manager. Deloach testified that Pridgen discharged him after visiting his stores three times and spending approximately six hours with him. Pridgen called Deloach on a Sunday night and set up a meeting for the next morning to review some paperwork. The next morning Pridgen and Easterling fired him for "ineffective job performance."

Although the discharge was based in large part on alleged poor store conditions, Pridgen testified that he did not ask Deloach to sign the only supervisory report he wrote regarding Deloach because he did not consider the problems identified in that report serious enough to warrant Deloach's signature. He also admitted that he had enlarged upon the claims in that report when he wrote Easterling suggesting the termination and that he did not have any documentation that he went over the additional claims with Deloach. Moreover, Deloach pointed out that another supervisor who had received three supervisory reports from Pridgen with similar claims was still employed as an Area Supervisor at Delchamps.

Grocery shrink also was identified as one of Deloach's major problems. Yet, Deloach provided evidence that, although he allegedly was fired for having a grocery shrink of 1.4 percent, Richard Pridgen had a 1.4 percent grocery shrink as an Area Supervisor at the time that he was promoted to Zone Manager. Deloach also provided the

the grocery business for which management personnel are held accountable.

testimony of John Wright, a Certified Public Accountant, who analyzed data provided by Delchamps regarding the shrink reports of various Area Supervisors, as well as wages and other controllable costs. Wright testified that, based upon the figures provided to him, Deloach managed stores that were either as efficient or more efficient than those of his peers.

Deloach further identified inconsistencies in the testimony of his former supervisors. For example, although Easterling testified that Deloach's performance at times was "deplorable" in 1983, he did not write a supervisory report until April 1985. Additionally, in 1984 Easterling and Rhodes had asked Deloach to take over the supervision of two faltering stores in Houma, Louisiana.

Deloach testified that he felt at the time of his discharge that he was terminated because of his age. He also testified that Pridgen at one point told him that he had problems working with older people and that Easterling had told him not to hire anyone for manager that was thirty years old or older. As circumstantial evidence to support his age discrimination claim, Deloach also pointed out that he was replaced by William Fairchild, who was thirty-two years old and had no experience as an Area Supervisor, and that Fairchild was later replaced by a man in his twenties. Furthermore, in the area currently supervised by both Easterling and Pridgen, only one Area Supervisor is over the age of forty.

To rebut this evidence, Delchamps pointed out that Easterling was fifty-two years of age at the time he approved the discharge and that Rhodes is approximately one year older than Deloach. Delchamps further provided evidence that there were Area Supervisors over the age of forty in other Delchamps zones.

Delchamps claims that Deloach's evidence that only one Area Supervisor in Louisiana is within the protected age group is inadmissible statistical evidence as a matter of law because it fails to provide any relevant comparison to those who might be eligible. To support this proposition, Delchamps cites *Castaneda v. Pick-*

*ard,* 781 F.2d 456, 463 (5th Cir.1986), and *Lewis v. National Labor Relations Bd.,* 750 F.2d 1266, 1275 (5th Cir.1985). These cases, however, both involved class actions challenging employment practices and policies as discriminatory. "Class action or pattern and practice employment discrimination suits require a statistical comparison between the . . . composition of the employer's work force and that of the relevant labor market before a finding of discrimination can be made." *Castaneda,* 781 F.2d at 463. Indeed, relevant statistical comparisons alone may establish a prima facie case of discriminatory practices. *See, e.g., Hazelwood School Dist. v. United States,* 433 U.S. 299, 307–08, 97 S.Ct. 2736, 2741–42, 53 L.Ed.2d 768 (1977). Statistical analyses have no such primary role in private disparate treatment cases and their admissibility in such cases should not be based upon the same exacting standards. The data therefore was admissible as circumstantial evidence supporting Deloach's age discrimination claim.

Delchamps further claims that while statistical data may be used to establish a prima facie case, it cannot be used to establish pretext. *See Sessions v. Rusk State Hosp.,* 648 F.2d 1066, 1071 (5th Cir. Unit A June 1981). While that may be true when that is the only evidence a plaintiff has to establish pretext, *see id.,* we do not believe the same rule applies when a plaintiff offers additional evidence.

## B. Standard of Review

 A party is entitled to a new trial when the jury verdict is against the great weight of evidence. *See Rousseau v. Teledyne Movible Offshore, Inc.,* 812 F.2d 971, 972 (5th Cir.), *cert. denied,* 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987). We review the denial of a motion for new trial for an abuse of discretion. *King v. Exxon Co.,* 618 F.2d 1111, 1115 (5th Cir.1980).

 Deloach presented evidence that drew the basis for his discharge into question and supported a finding that the proffered reasons for his discharge were pretextual. He provided evidence supporting an inference of discriminatory practices

within Delchamps' stores in Louisiana. He further "lent his oath" to specific statements made by Deloach's supervisors that were probative of an unlawful discriminatory intent. *See Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1507 (5th Cir.1988). "This case involved a factual dispute between the witnesses for each party and credibility determinations were made by the jury." *Hansard v. Pepsi–Cola Metro. Bottling Co.,* 865 F.2d 1461, 1465 (5th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989). Under these circumstances, the jury verdict was not against the "great weight of evidence." Thus, the district court did not abuse its discretion in denying Delchamps' motion for a new trial.

### C. Claims of Error

#### 1. *Evidence*

■ Delchamps claims that a new trial should be granted on the basis of several erroneous rulings made by the district court. The first claim of error is in regard to the testimony of John Wright. The court accepted Wright "as an expert in the field of accounting and ... as an expert qualified to give an opinion on the efficiency or lack thereof of the operation which he studied." Over Delchamps' objection, the court allowed Wright to give his opinion that if the decision as to which Area Supervisor to terminate had been based upon efficiency, as demonstrated by the documents and statistics that he had prepared, Deloach would not have been fired. Delchamps argues that it was legal error to admit this testimony because it is clear from the record that Delchamps did not use this criteria in making the termination decision. Moreover, Delchamps claims that it is Delchamps, rather than Wright or the jury, who is to determine how to rate its supervisors. *See Elliott v. Group Medical & Surgical Serv.,* 714 F.2d 556, 567 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984).

We find no legal error. The evidence was relevant to the issue of Deloach's performance because Delchamps claimed that Deloach's inability to control shrink and overtime wages were, in part, the basis for his termination. *See* Fed.R.Evid. 401, 402. Wright derived his efficiency opinion, which the court found him qualified to give, from examining that data. Moreover, it was not unfairly prejudicial because the court clearly indicated that Wright's answer was entirely based upon the hypothetical assumption that Delchamps used that same criteria in making its termination decision. Delchamps made it clear that they did not evaluate their supervisors in that manner. As this fact was before the jury, the prejudicial effect was limited and the jury was free to weigh the evidence accordingly. *See* Fed.R.Evid. 403. Delchamps raises additional evidentiary claims that we find are without merit.

#### 2. *Jury Instructions*

■ Delchamps further claims that the court erred in declining to use several proposed jury charges. Delchamps had requested, among other things, that the jury be instructed that when an employer terminates an employee on the basis of a good faith but erroneous belief in the validity of its reasons for termination, the employer does not violate discrimination laws. Delchamps also requested an instruction that Deloach's age did not require Delchamps to justify the discharge or prove that age was not the determining factor. Delchamps additionally requested the following charge:

> Put another way, the basic legal principle is that an employer has the right to terminate an employee for good reason, bad reason, an erroneous reason, or no reason at all, as long as there is no discrimination because of age.

However, in lengthy jury instructions, the court indicated to the jury that the plaintiff had to prove discrimination and that the jury had to find age was a determinative factor in the termination decision. The court defined determinative factor to mean "that the plaintiff would not have been discharged except for his age." The instructions further provided,

> If you find that the defendant's decision to terminate the plaintiff was based on reasons in which age was not a determin-

ing factor, there would be no violation of the law and plaintiff would not be entitled to recover.

Even if the reasons offered by defendant for terminating plaintiff may seem poor or erroneous to you and even if the reasons are not the ones that you would act on or approve of, you cannot find in favor of the plaintiff unless you are persuaded that age was a determining factor in defendant's decision to terminate the plaintiff.

The violation of company policy or procedures by defendant does not constitute violation of the Age Discrimination Act. The law does not require the defendant to grant any special treatment or favoritism to an employee because he is at least 40 years of age. Rather, what the law requires is that the company treat such a person's age as a neutral factor, neither helping him nor hurting him in the decisions that the company makes.

"[A] trial court is given broad discretion in wording its jury instructions and will not be reversed as long as the charge correctly states the substance of the law." *United States v. L'Hoste,* 609 F.2d 796, 805 (5th Cir.), *cert. denied,* 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980). The instructions given by the district court adequately state the substance of age discrimination law and therefore do not constitute reversible error.

## II. Front Pay

### A. Delchamps' Claims

■ Delchamps contends that the district court erroneously awarded Deloach front pay, or future lost earnings, rather than reinstating Deloach. This determination is also reviewed for abuse of discretion. *See Goldstein v. Manhattan Indus.,* 758 F.2d 1435, 1448–49 (11th Cir.), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985).

■ Reinstatement is generally the preferred remedy for a discriminatory discharge. *Hansard,* 865 F.2d at 1469. However, front pay may be awarded if reinstatement is not feasible. *Id.* The district

court specifically found that reinstatement was not a realistic alternative. The court reached this determination after noting that Delchamps had decided to terminate Deloach rather than demote him due to the morale problems that would ensue. It then concluded that after trial "there [was] less likelihood than ever that plaintiff could be a satisfactory employee with defendant." The court also noted that because Deloach had been replaced, reinstatement would disrupt the employment of others. As these are permissible bases for awarding front pay, we find no abuse of discretion. *See Goldstein,* 758 F.2d at 1449 (front pay appropriate when "discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy").

■ In determining the front pay award, the court noted that an award for any longer than five years was too speculative and found that $215,000 would adequately compensate Deloach. Delchamps initially argues that an award compensating the plaintiff for five years is too speculative and therefore constitutes an abuse of discretion. To support this argument, Delchamps points out that many courts have awarded front pay for only up to three years. *See, e.g., Dominic v. Consolidated Edison Co.,* 822 F.2d 1249, 1258 (2d Cir. 1987) (two years); *Snow v. Pillsbury Co.,* 650 F.Supp. 299 (D.Minn.1986) (three years); *Reeder–Baker v. Lincoln Nat'l Corp.,* 649 F.Supp. 647, 664 (N.D.Ind.1986) (two years), *aff'd,* 834 F.2d 1373 (7th Cir. 1987). However, as a prospective make-whole remedy, front pay at best "can only be calculated through intelligent guesswork." *Sellers v. Delgado College,* 781 F.2d 503, 505 (5th Cir.1986). "[W]e recognize its speculative character by according wide latitude in its determination to the district courts." *Id.* We find that an award covering a five year period was within the court's discretion.

■ Delchamps further contends that even if front pay over a five year term is appropriate, the award is excessive. It is unclear exactly how the court arrived at the $215,000 award. The court noted that

plaintiff's expert Donald Cornwell projected that the present value of front pay lost[3] was $245,000 if calculated to age sixty-two, which covers a thirteen year period, and $308,000 if calculated to age sixty-five, which covers a sixteen year period. The court also noted that Deloach's 1985 salary was $54,000. The award may constitute an adjustment of the present value of front pay lost. If so, it is excessive because a straight percentage adjustment of either calculation to reflect a five year award would be under $100,000. Alternatively, the award may have been based upon the 1985 salary—multiplied times five years ($270,000), and then discounted to present value. If so, it is erroneous because it does not include deductions for interim earnings. Since discrimination remedies are compensatory rather than punitive, *Hansard*, 865 F.2d at 1469, Deloach's present salary should be deducted from his previous salary to avoid a windfall, *Blum v. Witco Chem. Co.*, 829 F.2d 367, 374 (3d Cir.1987). Accordingly, we vacate the front pay award and remand for determination of the proper award. We note additionally that Deloach is entitled to prejudgment interest on the front pay award that the district court finds appropriate. *Giancontieri v. Pan Am. World Airways, Inc.*, 767 F.2d 1151, 1159 (5th Cir.1985).

## B. Deloach's Cross Claims

 In an oral order, the district court determined that front pay constitutes an equitable remedy and therefore does not pose a jury question. The court reserved for itself the determination of the amount, while submitting it to the jury in an advisory capacity. Although the jury found that Deloach was entitled to $494,000 in front pay, the district court reduced the award to $215,000. Deloach contends that the district court erred in reducing the front pay award that had been determined by the jury, claiming that he had a right to a jury

trial on that issue under Louisiana law. In support, Deloach points out that Louisiana broadly recognizes a right to jury trial unless expressly denied by law. *Williams ex rel. Williams v. Kushner*, 449 So.2d 455, 457 (La.1984); La.Code Civ.Proc.Ann. arts. 1731, 1732 (West Supp.1990). This argument, however, ignores the fact that federal law governs the "characterization of state-created claims as equitable or legal for purposes of determining whether a right to jury trial exists." *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1125 (5th Cir. 1978). For resolving the issue, state law is considered irrelevant. 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2303, at 24, 28–29 (1971).

This Court has not yet squarely addressed the question whether determining the amount of a front pay award raises a legal or equitable issue under the ADEA.[4] All circuit courts that have considered the issue, including the Fifth Circuit, agree that since reinstatement is equitable, the district court must determine whether an employee can be reinstated or is entitled to front pay. *See Hansard*, 865 F.2d at 1470; *Dominic*, 822 F.2d at 1257–58; *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 796 (3d Cir. 1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); *Goldstein*, 758 F.2d at 1448; *Davis v. Combustion Eng'g*, 742 F.2d 916, 923 (6th Cir.1984); *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1100 (8th Cir.1982).

However, the circuit courts are split on the issue of whether a jury or the trial court is to determine the proper amount of ADEA front pay. *Compare Fite v. First Tenn. Prod. Credit Ass'n*, 861 F.2d 884, 893 (6th Cir.1988) (amount of front pay is a jury question); *Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321, 1333 n. 4 (7th Cir.1987) (suggesting in dicta that the amount of front pay should be a jury question), *vacated on other grounds*, 486 U.S. 1020, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988); and

---

**3.** This value indicates the difference between Deloach's current salary and his former salary with Delchamps.

**4.** We note this Court has gone so far as to say that "the jury *should* determine the amount of

damages." *Hansard,* 865 F.2d at 1470 (emphasis added). We read this case neither as squarely addressing the issue nor as making the jury submission mandatory.

*Maxfield,* 766 F.2d at 796 (Third Circuit— amount of front pay is a jury question) *with Dominic,* 822 F.2d at 1258 (Second Circuit—under the ADEA "front pay is a matter for the exercise of the trial.judge's equitable discretion"); *Wildman v. Lerner Stores Corp.,* 771 F.2d 605, 616 (1st Cir. 1985) (award of front pay is within the trial court's discretion); and *Gibson,* 695 F.2d at 1100 (Eighth Circuit—monetary damages in lieu of reinstatement constitute an equitable rather than a legal remedy and award is within the trial court's discretion).

The ADEA provides express jury trial rights. 29 U.S.C. § 626(c)(2). The Second Circuit, which has provided the most thorough review of the issue, has analyzed this statutory language and the ADEA legislative history in reaching its conclusion. *See Dominic,* 822 F.2d at 1256–58.[5] However, the statutory language that provided the cornerstone of this analysis is absent from the LADEA. Thus, federal law based on interpretation of congressional directives contained in that language provides inadequate precedent.

We are essentially left to determine what federal law provides in the absence of legislative comment. We turn to section 1983, as a more analogous statutory frame of reference. Section 1983, like the Louisiana statute, provides generally that a victim of discrimination is entitled to seek legal or equitable relief. *Compare* 42 U.S.C. § 1983 *with* La.Rev.Stat.Ann. § 23:973

(West Supp.1990). As noted above, reinstatement is an equitable remedy and front pay is awarded in lieu of reinstatement. *See Haskins v. City of Boaz,* 822 F.2d 1014, 1015 (11th Cir.1987); *Gibson,* 695 F.2d at 1100. "Although front pay is an award of monetary relief, it is still an equitable remedy" in section 1983 cases. *Haskins,* 822 F.2d at 1015. As an equitable remedy under federal law, we believe that it was within the district court's discretion to determine the amount of the front pay award. Accordingly,. Deloach is not entitled to reinstatement of the jury award.

### III. General and Liquidated Damages

■ Plaintiff claims that the court erroneously found that he was not entitled to liquidated or general damages under the LADEA. The LADEA provides that any party aggrieved by any violations under the Act may "bring a civil action in any court of competent jurisdiction for *legal or equitable relief.*" La.Rev.Stat.Ann. § 23:973 (West Supp.1990). The underscored language appears in both the federal ADEA and the LADEA. *See* 29 U.S.C. § 626(b). In interpreting this provision, federal courts have concluded that general damages are not authorized under the ADEA. *See, e.g., Dean v. American Sec. Ins. Co.,* 559 F.2d 1036, 1038–39 (5th Cir. 1977), *cert. denied,* 434 U.S. 1066, 98 S.Ct.

---

**5.** Under the federal ADEA an aggrieved party is entitled to "[a]mounts owing ... as a result of a violation," which includes wages, fringe benefits, and other job-related benefits, as well as liquidated damages for willful violations. 29 U.S.C. § 626(b); H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess. 13–14, *reprinted in* 1978 U.S. Code Cong. & Admin.News 528, 535 ("Conference Report"). Victims of age discrimination are also entitled to "such legal or equitable relief as may be appropriate," which includes reinstatement. 29 U.S.C. § 626(b). The ADEA further provides for a trial by jury "of any issue of fact in any such action for recovery of amounts owing as a result of a violation of this chapter." *Id.* § 626(c)(2).

The legislative history indicates that the ADEA was intended to provide jury trial rights on claims considered legal in nature. This is reflected in congressional statements made in reference to liquidated damages. At the time of the ADEA's passage, the Supreme Court had

established that lost wages constituted legal relief under the ADEA, but had not decided whether liquidated damages were legal or equitable in nature. *Lorillard v. Pons,* 434 U.S. 575, 582–85, 98 S.Ct. 866, 871–72, 55 L.Ed.2d 40 (1978). The Conference Report concluded that "[b]ecause liquidated damages are in the nature of legal relief, ... a party is entitled to have the factual issues underlying such a claim decided by a jury." Conference Report at 13–14, *reprinted in* 1978 U.S.Code Cong. & Admin.News at 535.

However, the language of the ADEA suggests that jury trial rights do not extend to equitable relief since jury trial rights are restricted to actions for recovery of "amounts owing," which are defined to include only relief that is legal in nature. Based upon this analysis the Second Circuit concluded that jury trial rights under the ADEA are limited "to factual issues underlying claims for legal relief" and do not extend to front pay awards. *Dominic,* 822 F.2d at 1257.

1243, 55 L.Ed.2d 767 (1978). We agree with the district court that since the federal rule was clear, and since the Louisiana Legislature used the identical language, it must have intended the same rule. This conclusion is further supported by the fact that the Louisiana statute prohibiting race and sex discrimination in employment expressly provides for general damages while the LADEA does not. *See* La.Rev.Stat. Ann. § 23:1006 D (West 1985).

Additionally, the district court concluded that liquidated damages were not recoverable under the LADEA because, while the ADEA expressly authorizes liquidated damages for willful violations, the LADEA conspicuously omits any reference to liquidated damages. *Compare id.* § 23:973 *with* 29 U.S.C. § 626(b). Deloach argues that in omitting specific reference to the types of relief available under the LADEA, the Louisiana Legislature intended a more expansive interpretation of the words "legal or equitable relief" than the ADEA provides. We are unpersuaded by this argument. The Louisiana Legislature has demonstrated its ability to specify the relief available under discrimination law. *See* La.Rev.Stat.Ann. § 23:1006 (West 1985). Since the legislature could have authorized liquidated damages, but did not, we find that liquidated damages were properly denied.

■ Deloach additionally argues that he is entitled to general and liquidated damages under La.Rev.Stat.Ann. §§ 51:2231–51:2265 (West Supp.1990) ("1988 Statute"). That statute created the Louisiana Commission on Human Rights and was enacted "to safeguard all individuals within the state from discrimination because of race, creed, color, religion, sex, age, or national origin in connection with employment and in connection with public accommodations." *Id.* § 51:2231. Deloach acknowledges that the damages provisions of the 1988 Statute are not directly applicable to this case since the statute was enacted after the 1987 trial. Rather, he contends that as a remedial or curative statute its broadened remedy provisions apply retroactively.

The basis for this argument is *Fullilove v. U.S. Casualty Co.*, 129 So.2d 816, 824 (La.Ct.App.1961), which held that remedial statutes "are applicable not only to past transactions but also to pending cases, either in the trial court or on appeal." A statute is remedial if it "confer[s] a remedy for the redress of wrongs which those already authorized to sue had sustained." *Id.* However, statutes conferring new substantive rights are not applied retroactively. *See Baynard v. Guardian Life Ins. Co. of Am.*, 399 So.2d 1200, 1202 (La.Ct. App.1981).

Deloach claims that the 1988 Statute did not create a new cause of action for age discrimination, since that claim could be brought under the LADEA. This argument, however, ignores the many substantive provisions created under the 1988 Statute. The statute primarily establishes the Louisiana Commission on Human Rights, which is authorized to perform certain functions to eradicate widespread discrimination. *See* La.Rev.Stat.Ann. §§ 51:2233– 51:2241, 51:2259–51:2263. The statute also allows persons who have been injured by an alleged violation of the statute to file a civil suit to enjoin further violations and to recover damages actually sustained. *Id.* § 51:2264. As the statute creates new substantive rights, a new enforcement scheme, and new remedies, it does not apply retroactively. Thus, general and liquidated damages were properly denied.

## IV. Attorney's Fees

■ On November 17, 1988, the district court entered judgment for Deloach and stated that he was entitled to attorney's fees in an amount to be decided later. On December 1, Deloach filed a petition to fix the amount of attorney's fees. The court subsequently determined that attorney's fees might not be available under the LADEA and on its own motion requested briefing on that issue. On August 11, 1989, a Memorandum Ruling was issued, denying the petition on the ground that the LADEA did not authorize attorney's fees. On August 21, Deloach filed a motion to enforce the original November 17 judg-

ment. The district court denied that motion on August 28 for the reasons indicated in the August 11 Memorandum Ruling. A final judgment on the petition to fix the amount of attorney's fees was entered on September 13, from which Deloach filed a timely appeal.

On appeal Deloach first claims that the original judgment stating that he was entitled to attorney's fees was final and that the district court could not alter that decision on its own motion. We disagree. It is clear that a judgment on the merits determining both liability and damages is final even though the attorney's fee issue has been left open. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 108 S.Ct. 1717, 1721–22, 100 L.Ed.2d 178 (1988). Additionally, attorney's fees are considered collateral to the merits, so that final judgments as to attorney's fees can be appealed separately from the "merits" judgment. *Id.*, 108 S.Ct. at 1720. Because a judgment is not final until both liability and damages are determined, a judgment awarding an unspecified amount of attorney's fees is interlocutory in nature. *See Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 744, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976). A court is free to vacate an interlocutory order on its own motion. *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 862 (5th Cir.1970); *see Gallimore v. Missouri Pac. R.R.*, 635 F.2d 1165, 1170–71 (5th Cir. Unit A Feb. 1981). Thus, the district court was entitled to reconsider whether the LADEA authorizes an award of attorney's fees.

Deloach further contends that the district court erred in concluding that he was not entitled to attorney's fees. Under Louisiana law, attorney's fees are not recoverable unless specifically authorized by statute. *Killebrew v. Abbott Labs.*, 359 So.2d 1275, 1278 (La.1978). The LADEA does not provide for attorney's fees and thus we are precluded from making such an award. Deloach additionally argues that he is entitled to attorney's fees pursuant to the 1988 Statute, which he again argues should be applied retroactively. For the reasons stated in Section III of this opinion, we conclude that Deloach is not entitled to the additional remedies provided in the 1988 Statute. Accordingly, attorney's fees were properly denied.

The judgment for Deloach and the award of $46,500 in back pay are AFFIRMED. The denials of general and liquidated damages and attorney's fees are AFFIRMED. The $215,000 award of front pay is VACATED and the case is REMANDED on that issue for proceedings not inconsistent with this opinion.