John M. ROPER

v.

EXXON CORPORATION.

No. CIV. A. 97–1971.

United States District Court,
E.D. Louisiana.

Oct. 23, 1998.

**680**

Scott D. Wilson, Scott D. Wilson, Attorney at Law, Baton Rouge, LA, for Plaintiff.

David M. Rivet, Exxon Company, U.S.A., Houston, TX, Edward F. Kohnke, IV, Michael Raudon Phillips, Bari Lynn Giordano, Frilot, Partridge, Kohnke & Clements, LC, New Orleans, LA, for Defendant.

## ORDER AND REASONS

PORTEOUS, District Judge.

Before this court are the motions of defendant, Exxon Corporation, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and to dismiss the Fair Labor Standards Act claim under rule 12(b)(6). These motions came for hearing on an earlier date. Oral argument was waived and the court took the matter under advisement on the briefs. Having reviewed the motion and memoranda, exhibits and applicable law, this court sits ready to rule.

## I. BACKGROUND

Plaintiff, John Roper, filed this age discrimination case against defendant, Exxon Corporation, alleging that he was terminated as a litigation attorney in defendant's Law Department because of his age. Plaintiff is asserting claims against defendant under the federal Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (ADEA), Louisiana's anti-age discrimination laws,[1] and Louisiana Civil Code article 2315. Additionally, plaintiff asserts that his termination constitutes an intentional interference with future retirement benefits that is actionable

---

**1.** Plaintiff seeks relief for the alleged age discrimination under Louisiana's counterpart Age Discrimination Act, La.R.S. 23:971 *et seq* (LAEDA); Louisiana's Commission on Human Rights Act, La.R.S. 51:2231 *et seq;* and Louisiana's Civil Code Art. 2315. In 1997, the Louisiana legislature consolidated Louisiana's employment discrimination statutes relating to age, disability, race, color religion, sex and national origin into one chapter of law, the Louisiana Employment Discrimination Law at R.S. § 51:301, *et seq.* 1997 La.Acts 1409. Accordingly, the age discrimination provision previously at La.R.S. § 23:971 was moved to R.S. § 51:2231. *Id.* Plaintiff's claims are based on the earlier discrimination statutes, the LAEDA and Louisiana's Commission on Human Rights Act.

under Section 510 of the Employee Retirement Income and Security Act (ERISA) 29 U.S.C. § 1140. Last, plaintiff asserts that he was terminated in retaliation for his complaints about age discrimination in violation of the antiretaliation provision of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 215(a)(3).

Plaintiff was 33 years old when he was hired by Exxon as an in-house attorney in 1974. (Doc. 63). He was initially assigned to Exxon's Law Department in Houston, Texas. In 1975, Roper was assigned to Exxon's Southeastern Production Division and moved to New Orleans, where the division's business offices were located. *Id.* In 1976, Roper was transferred to the Law Department's litigation section in New Orleans, where he remained employed until January 30, 1997. *Id.* Between 1976 and 1997, the New Orleans litigation section was managed by three different attorneys: Bernard Caillouet (1974—1985), Paul Wright (1985—1992), and William Hurt (1992—1997). Roper was one of several attorneys who handled a docket of cases representing Exxon and its affiliates. *Id.*

The Exxon Law Department annually evaluates and ranks its employees on a relative basis. (Doc. 58, Ex. 1). The ranking process, consistent throughout plaintiff's tenure in the Litigation Section, is a multifaceted process that involves input from the attorney, supervisors and clients. *Id.* The end result is that an attorney is ranked based upon his or her relative contribution and performance among the other attorneys in that rank group (*i.e.*, a group consisting of lawyers with similar job classifications and responsibilities within the Law Department). *Id.* Each attorney is then give a rank group percentile (RG%), with 99 RG% being the relatively best performing attorney and 0 RG% being the relatively worst performing attorney.

In 1993, Exxon adopted the Continuous Performance Improvement guideline (CPI). *Id.* Under the CPI guideline, employees at the bottom 10 RG% are advised of their position and receive special management attention. *Id.* If the employee's relative performance does not show sustained improvement, they are subject to reassignment, declassification, or separation from the company. *Id* .

Plaintiff was in the 10 RG% the last three years of his employment. *Id.* In accordance with the CPI guidelines, plaintiff was counseled and advised of his ranking in 1994 and 1995. (Doc. 58, Ex. 2). In 1996, defendant advised plaintiff that he would be terminated upon reaching annuitant status. *Id.* Plaintiff reached annuitant status on November 5, 1996, however, he continued to be employed by Exxon through January 30, 1997. (Doc. 59).

## II. LAW AND ANALYSIS

### Law on Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco,* 76 F.3d 651 (5th Cir.996), (citing *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 912–13 (5th Cir.) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial. Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus-*

trial Co. v. Zenith Radio Corp., 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Finally, the court notes that the substantive law determines materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### The ADEA Claim

■ The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The evidentiary burdens of each party in an ADEA case are well-established. A plaintiff must first present a prima facie case of employment discrimination. Bodenheimer v. PPG Industries, Inc., 5 F.3d 955, 957 (5th Cir.1993); Elliott v. Group Medical & Surgical Serv., 714 F.2d 556, 563 (5th Cir.1983), cert. denied 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984). There are four elements to a prima facie case of employment discrimination under the ADEA. The plaintiff must prove that: 1) he was discharged; 2) he was qualified for his position; 3) he was within the protected class; 4) he was replaced by someone outside the protected class, someone younger, or was otherwise discharged because of his age. Bodenheimer, 5 F.3d at 957; Elliott, 714 F.2d at 563.

■ If the plaintiff meets this burden, the employer must rebut the presumption of age discrimination by articulating a legitimate nondiscriminatory reason for the adverse employment action. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–1094, 67 L.Ed.2d 207 (1981); Thornbrough v. Columbus and Greenville R.R. Co., 760 F.2d 633, 639 (5th Cir.1985). If the employer presents such evidence, then the burden of production shifts back to the plaintiff to present probative evidence that the employer's state reason was pretext.

Bodenheimer, 5 F.3d at 957–58; Thornbrough, 760 F.2d at 639.

The parties agree that Roper has established the first three elements of his prima facie case. However, whether Roper has established the fourth element remains in dispute. Roper asks the court to infer age discrimination from several allegations: (1) that his active docket were all reassigned to persons younger than plaintiff, (2) that the appraisal process was corrupted to match his rating to his rank, (3) that there is a pattern of age discrimination and a correlation between age and rank and (4) that there was no sudden decline in plaintiff's job performance. (Doc. 59). Roper alleges that Exxon's motive for his discharge was because he was the oldest attorney in the office. Id. Exxon moves for summary judgment on three grounds 1) plaintiff has not stated a prima facie case, 2) defendant's reason's for terminating plaintiff are legitimate and nondiscriminatory and 3) defendant's proffered reasons for Roper's termination are not pretextual.

■ As to Exxon's primary assertion that Roper fails to present a prima facie case of age discrimination, Exxon presents evidence that when Roper took annuitant status at age 55 he was not "replaced." Instead, his caseload was reassigned to other existing in-house counsel and an outside firm.[2] Plaintiff argues that the reassignments are evidence that Roper was discharged due to his age because the assignees are younger. However, the transfer of work to other employees or outside contractors upon termination does not constitute "replacement" for purposes of the ADEA. Meinecke v. H & R Block of Houston, 66 F.3d 77, 83–84 (5th Cir.1995); Armendariz v. Pinkerton Tobacco Co., 58 F.3d 144, 150 (5th Cir.1995). Additionally, plaintiff is required "to show that he was replaced by a worker sufficiently younger in the context of his employment to permit an inference of age discrimination." Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1506 (5th Cir.1988). Exxon's reassign-

---

**2.** Plaintiff's case load was reallotted to: William Courtney, age 50; Robert Wood, age 53; William Bennett, age 43; Patricia Weeks, age 34; and to the outside firm of Frilot, Partridge, Kohnke & Clements.

ment of Roper's workload among several of its employees and an outside source is not sufficient evidence of replacement by someone outside the class or someone younger.

■ Exxon further argues that Roper was not discharged because of his age, but due to his low ranking in Exxon's CPI guidelines. Roper contends that the appraisal process was corrupted to match his rating to his rank, that there is a pattern of age discrimination and a correlation between age and rank, and that there was no sudden decline in plaintiff's job performance, indicating that his age must have been impetus behind his discharge. Plaintiff's claim, however, just does not hold water.

Plaintiff's ranking had been consistently low for many years, without any correlation to his age.[3] "More than anything else,...it was Mr. Roper's antagonistic attitude and extremely poor interpersonal skills in the workplace which resulted in his overall performance relative to the other attorneys..." (Doc. 58, Ex. 3). Throughout his career, plaintiff has been noted for his overbearing manner towards his coworkers and subordinates.[4] Although he is generally thought to be a good attorney, he was a difficult employee. (Doc. 58, Ex. 3).

Although plaintiff alleges that there is a pattern of discrimination, there is just no evidence to support that. He asserts that two other attorneys (also with low rankings) were forced to retire or face termination without benefits. Two, even three including plaintiff, does not make a pattern in light of defendant's employment statistics of plaintiffs peer group for the years 1994, 1995 and 1996:

> During these years, the average age of Mr. Roper's peer group was 49, 48 and 50 respectively. Additionally the number of attorneys in Roper's peer rank group who were 50 years or older actually increased between 1994 and 1996. Specifically, 28 of the 65 attorneys (43%) were in their 50s on the 1994 list, while 27 of the 57(47%) were in their 50s on the 1996 list. During Mr. Roper's employment, several attorneys in Mr. Roper's peer group were, in fact, older than Mr. Roper. (Doc. 58, Ex. 1)

Additionally during the above three ranking years, there is no distinguishable correlation between age and rank. For each year, there are several individuals age 55 or older who are above the 10 RG% cutoff. *Id.*

■ Plaintiff's subjective disagreement and dissatisfaction with his performance review does not create pretext. *Waggoner v. City of Garland,* 987 F.2d 1160, 1164 (5th Cir.1993) ("we have held that a plaintiff's subjective belief that his discharge was based on age is simply insufficient to establish an ADEA claim"). However, Exxon's careful documentation of plaintiff's consistently low performance and negative attitude establish that there existed significant reason and justification, without regard for his age, for terminating Roper's employment. Consequently, plaintiff has not established a prima facie case for age discrimination.

### LADEA & LCHRA

■ Both federal and state courts rely on ADEA jurisprudence in determining the existence of an LADEA claim. *See, Hypes v. First Commerce Corp.,* 134 F.3d 721 (5th Cir.1998) (ADEA and LADEA claims); *Deloach v. Delchamps,* 897 F.2d 815, 818 (5th Cir.1990); *Pinsonat v. Je Merit Constructors, Inc.* 962 F.Supp. 848, 851 n. 6 (M.D.La. 1996) *Cf. Spears v. Rountree Oldsmobile–Cadillac Co.,* 653 So.2d 182 (La.App. 2d Cir. 1995) (using interpretations of federal statute to construe state anti-discrimination statutes). Consequently, plaintiff's LADEA

---

**3.**

| Year of Ranking | Rank | Total Employees | RG% |
|---|---|---|---|
| 1996 | 57 | 57 | 1 |
| 1995 | 62 | 62 | 1 |
| 1994 | 62 | 65 | 5 |
| 1993 | 63 | 71 | 12 |
| 1992 | 69 | 74 | 2 |
| 1991 | 71 | 72 | 2 |
| 1990 | 72 | 74 | 2 |

| Year of Ranking | Rank | Total Employees | RG% |
|---|---|---|---|
| 1989 | 72 | 73 | 1 |
| 1988 | 49 | 68 | 27 |
| 1987 | 45 | 62 | 27 |

(Doc. 58, Ex.1).

**4.** *See,* Doc. 58, Exs. 3, 5, 10, 11, & 22.

claim is dismissed for the same reasons as his ADEA claim.

■ Additionally, plaintiff's LADEA and LCHRA claims are time barred. To maintain a suit under the LADEA and LCHRA, plaintiff must file suit within one year of specific notice of termination. *See generally, Jay v. International Salt Co.,* 868 F.2d 179, 180–181 (5th Cir.1989) (plaintiff must file suit within one year of adverse employment action). *Williams v. Conoco Inc.,* 860 F.2d 1306, 1308 (5th Cir.1988); *King v. Phelps Dunbar, L.L.P.,* 716 So.2d 104 (La.App. 4th Cir. 6/3/98) (prescription should be calculated from date of constructive discharge).[5] Roper had been aware of his impending termination for some time,[6] but received the official separation date on May 22, 1996 with a confirmation letter the next day. (Doc. 58 Ex. 18). At the very latest, the prescription period began running on May 23, 1996. Because plaintiff did not file suit until June 24, 1997, his state law claims are prescribed.

### Louisiana Civil Code article 2315

■ Plaintiff has also brought a claim against Exxon under La.Civ.Code art. 2315 arising out of the incidents alleged in the complaint. This claim is also time barred for the above stated reasons. However, the claim also warrants dismissal because Louisiana is an "employment at will" state. La. Civ.Code art. 2747; *Brannan v. Wyeth Laboratories, Inc.,* 526 So.2d 1101, 1103–1104 (La. 1988). There are exceptions to this general rule, which preclude employers from terminating an employee for some discriminatory reason. The legislature, however, has acted to prevent such discrimination through such statutes as the LADEA and the LCRHPA. These statutes are exceptions to the general "at will" employment rule and exist to eliminate the possibility of article 2315 liability for employment discrimination. *See, Baynard v. Guardian Life Ins. Co. of America,* 399 So.2d 1200, 1202 (La.Ct.App. 1st Cir.1981).

Thus, even if Roper could establish his allegations, he could not recover under article 2315. *See, Caletka v. State Farm Mutual Automobile Ins.Co.,* 936 F.Supp. 380, 382 (1996).

### ERISA

■ Plaintiff asserts that Exxon terminated his employment to deprive him of pension benefits and ongoing participation in the company's thrift fund. Section 510 of ERISA provides in relevant part that:

> It shall be unlawful for any person to discharge... a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan... or for the purposes of interfering with the attainment of any right to which such participant may become entitled under the Plan...

"To recover under section 510, a plaintiff 'need not show that sole reason for his termination was to interfere with pension rights; however the plaintiff must show that the employer had the specific intent to violate ERISA.'" *Olitsky v. Spencer Gifts, Inc. .* 964 F.2d 1471, 1478 (5th Cir.1992) (quoting *Clark v. Resistoflex co., Div. of Unidynamics Corp.,* 854 F.2d 762, 770 (5th Cir.1988)). *See also, Hines v. Massachusetts Mut. Life Ins. Co.,* 43 F.3d 207, 209 (5th Cir.1995) ("[a]n essential element of a Section 510 claim is proof of defendant's specific discriminatory intent"). Although the required showing of specific intent involves an employer's state of mind, such a required showing does not preclude summary judgment. *McGann v. H & H Music Co.,* 946 F.2d 401, 408 (5th Cir. 1991) *cert.denied,* 506 U.S. 980, 113 S.Ct. 482, 121 L.Ed.2d 387 (1992). Additionally, plaintiff must prove that the loss of benefits was more than the incidental result of discharge. *Carlos v. White Consol.Ind., Inc.,* 934 F.Supp. 227, 232 (W.D.Tex.1996); *Rose v. Intelogic Trace, Inc.,* 652 F.Supp. 1328, 1330 (W.D.Tex.1987) ("No ERISA cause of action

---

**5.** *But see, Harris v. Home Sav. And Loan Assn.,* 663 So.2d 92 (La.App. 3 Cir. 7/27/95) (prescription runs from date of actual termination); *Brunett v. Dept. of Wildlife and Fisheries,* 685 So.2d 618 (La.App. 1 Cir. 12/20/96) (cause of action did not commence until date of notice of plaintiff's layoff). These cases are distinguishable from the

case at bar because here, unlike in *Harris* and *Brunett,* but like *King,* plaintiff new the specific date of his discharge far in advance.

**6.** Roper Depo. at 110.

lies...when the loss of...benefits was a mere consequence of, but not motivating factor behind, a termination of employment").

Defendant argues that under Section 510, plaintiff is required to set forth evidence that depriving him of benefits was a motivating factor behind his discharge and that plaintiff has no legitimate evidence to that effect.

Plaintiff acknowledges that he must prove that Exxon's motivating factor behind his discharge was to deprive Roper of benefits. He contends that proving Exxon's motivation is inappropriate for summary judgment because it involves the moving party's subjective intent.

Plaintiff has not put forth any documentation that would lead this Court to conclude that Exxon had specific intent to violate ERISA. Considering the voluminous amount of documentation of plaintiff's professional performance, this Court can only come to the reasonable conclusion that plaintiff was fired for cause. If anything, plaintiff's age was a determining factor in keeping him on as long as Exxon did. *See,* Doc. 58 Ex. 14 (plaintiff's memo to file that although he received a negative performance review, Exxon would not take action until he could retire).

## FLSA

█ Last, in his second amended complaint, plaintiff alleges that he was terminated in retaliation for his complaints about age discrimination, resulting in a violation of the anti-retaliation provision of the FLSA. Plaintiff further asserts that defendant's 12(b)(6) motion is untimely and cannot be considered because the motion was filed after defendant answered the second amended complaint.

Rule 12(b) "shall be made before pleading if a further pleading is permitted." A defendant must file such a motion before filing an answer. 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d S 1361. Exxon answered the plaintiff's second amended complaint and subsequently filed the 12(b)(6) motion to dismiss and thus,

it is untimely under Rule 12(b). The court can consider the motion under Rule 12(c) as a motion for partial judgment on the pleadings, assuming that the pleadings in the matter are closed.[7] Because Exxon has not filed a cross-claim or counter-claim, the court finds that the pleadings are closed and therefore, will consider this a motion for partial summary judgment on the FLSA claim.

Section 215(a)(3) of the FLSA provides in relevant part that it is unlawful: "to discharge or in any other manner discriminate against an employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter..." By the plain language of the statue, an individual must suffer discrimination as a result of a complaint *already filed* or an action *already commenced.* Such is not the case here.

Plaintiff received early warning on December 11, 1995 that he would be terminated (due to poor job performance) when he reached annuitant status, on November 5, 1996. (Doc. 77, Ex. B). Subsequently, plaintiff wrote a memo to William Hurt proposing that Roper and Exxon, "enter a compromise as an alternative to my asserting claims and pursuing remedies under the appropriate Federal and State statutes." (Doc. 77 Ex. A). In light of this memo, it seems that plaintiff is the actual retaliator, not defendant. Exxon, despite well-documented, poor job performance, allowed plaintiff to remain employed long enough to achieve annuitant status. In fact, defendant specifically waited until defendant reached annuitant status to effectuate his termination. In turn, plaintiff threatens a court action unless his "compromises" are met.[8]

Plaintiff argues that his December 11, 1995 meeting with Bill Hurt was just a "heads-up" that there was potential for his termination. Roper's own memos negate that contention. In his December 14, 1995 memo to Hurt, plaintiff refers to the "company's decision to

---

**7.** *See, Billiot v. Browning–Ferris, Inc.,* 1994 WL 495861 (E.D.La.1994).

**8.** Plaintiff's compromises included extending his termination date several weeks for tax purposes and employment as outside counsel. Defendant, despite plaintiff's threats and his request, actually agreed to allow him to remain with the company until January 1997.

terminate me..." (Doc. 77, Ex. A) and his February 27, 1996 memo refers to "the notification that I received form you (Hurt) on Dec. 11, 1995 that Exxon intends to terminate me when I reach the age of 55..." (Doc. 77, Ex. B). Plaintiff, in no way, refers to his impending termination as a possibility. Instead, as his own words indicate, it seems like it was a definitive conclusion on December 11, 1995.

Defendant's decision to terminate Roper's employment was not the result of Roper's threats to file administrative action, rather, Roper's threats to file complaints was the result of Exxon's decision to terminate plaintiff's employment. Plaintiff has suffered no discrimination as a result of his threats or actions. His employment status had been decided before any applicable FLSA provision would apply.

The Court finds that plaintiff has not met his prima facie burden and that his age discrimination and related claims completely lack merit. There are no facts in dispute from which a reasonable trier of fact could find that plaintiff's termination was the result of anything but his well-documented, poor job performance and negative attitude. The Court, having considered the facts, the memoranda of law, the relevant authority finds that plaintiff's suit is dilatory and without merit.

Accordingly,

**IT IS ORDERED** that the motion of defendant Exxon Corporation for summary judgment, be, and the same is hereby **GRANTED**

**IT IS FURTHER ORDERED** that the motion of defendant Exxon Corporation to dismiss for failure to state a claim as to the FLSA, be and the same is hereby **GRANTED** as a motion for partial summary judgment with regard to that claim.