**Delester POLLARD, Joshua Davis, Plaintiff,**

v.

**AZCON CORPORATION, a division of Blue Tee Corp., Defendant.**

No. 93 C 3474.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 3, 1995.

Andrew William Levenfeld, Andrew W. Levenfeld & Associates, Ltd., Chicago, IL, for plaintiff.

Joel J. Sprayregen, Tami J. Diamond, Shefsky, Froelich & Devine, Ltd., Chicago, IL, for defendant.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the motion of Defendant Azcon Corporation ("Azcon") for summary judgment. For the following reasons, the motion is granted.

### I. BACKGROUND [1]

Plaintiffs Delester Pollard ("Pollard"), Joshua Davis ("Davis") and James Turner ("Turner") filed suit in federal court alleging that Azcon wrongfully terminated them due to their race and ages in violation of Title VII and the Age Discrimination in Employment Act ("ADEA") respectively. Azcon operates a steel scrap yard in Hegewisch, Illinois ("Hegewisch Yard"). As part of its operation, Azcon dismantles rail cars, processes the scrap steel into small segments, and ships the scrap to steel foundries and mills for re-melting and recycling purposes.

All three Plaintiffs are African–American males previously-assigned to the Hegewisch Yard under the direction and supervision of Joseph Wydajewski ("Wydajewski"), the yard superintendent. Prior to September 1992, Davis and Pollard worked as rail breaker operators,[2] and Turner worked as a burner.[3] On September 16, 1992, Wydajewski observed Davis and Pollard asleep in and near the rail breaker to which they were assigned. Wydajewski stated in a deposition that he had witnessed both Plaintiffs sleeping for five to ten minutes. Although both Davis and Pollard now deny that they were sleeping, they both admit that they were sitting down and not working. This was the first time Wydajewski had ever found a subordinate sleeping at the Hegewisch Yard. Wydajewski sent Davis and Pollard home and instructed them to attend a meeting in his office the next morning. Both Davis and Pollard left the job site without ever denying that they were sleeping.

The next morning, Wydajewski met with Davis and Pollard. Both were given a written warning and a four-day suspension pending a final determination as to whether the two would be discharged from employment. Wydajewski then met with Richard Shure ("Shure"), a Vice President of Azcon, and both decided to terminate Davis and Pollard. On September 18, 1992, Azcon notified the two Plaintiffs that the suspension would be changed to a discharge effective September 23, 1992. The method of discharge utilized by Azcon was at all times in accordance with the Collective Bargaining Agreement between Azcon and the United Steelworkers of America AFL–CIO Local 5544–37 ("CBA"). At the time of their discharges, Davis was 55 years old and Pollard was 51 years old.

When Azcon terminated Davis, it assigned Davis' former position to Turner. Prior to changing positions, on December 17, 1991, Turner, without giving prior notice, failed to report to work. As a result, Wydajewski gave Turner a written warning. On March 11, 1992, Turner reported to work late. Again, Turner failed to give prior notice and, therefore, received a second written warning. On March 17, 1992, Turner failed again to report to work, and did not give notice of his absence. He received a third written warning. In addition to the warning, Wydajewski

---

1. The following facts are drawn from the parties' statements of facts submitted in compliance with Rules 12(M) and 12(N) of the Rules of the United States District Court for the Northern District of Illinois.

2. A rail breaker is a machine that cuts scrap rails into various lengths.

3. A burner utilizes a torch to cut steel scraps into smaller pieces.

gave Turner a one-day suspension without pay, and warned Turner that a similar subsequent violation could result in discharge. On October 9, 1992, less than a month after becoming a rail breaker operator, Turner again failed to report to work and properly notify his superior. As a result, Turner received a fourth written warning and a four-day suspension pending a discharge determination. Wydajewski then met with Shure, and both decided to terminate Turner effective October 19, 1992. Turner, who was 62 years old at the time of termination, contends that he did give notice on October 9, 1992, although he cannot remember to whom he gave the notice. In place of Turner, Azcon assigned Felipe DeHaro ("DeHaro"), a 45–year–old Hispanic male, as an interim rail breaker operator.

On October 5, 1992, Pollard and Davis both filed grievance reports in accordance with the terms of the CBA. Both claimed they were suspended and discharged without just cause.

In accordance with the CBA, both parties agreed to go before an impartial arbitrator. After a one-day hearing, the arbitrator found that Davis was terminated for just cause, but that Pollard was terminated unjustly. The arbitrator instructed Azcon to reinstate Pollard retroactively, with back-pay, after a thirty-day suspension without pay. Pursuant to the ruling of the arbitrator, Azcon reinstated Pollard in June 1993 with back-pay, retroactive to October 23, 1992, and with full seniority and benefits. In reliance on the arbitrator's decision, Azcon did not reinstate Davis.

On September 25, 1992, Davis and Pollard filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On October 22, 1992, Turner filed a Grievance Report pursuant to the CBA, contending that his discharge was too severe a penalty. On December 17, 1992, Turner filed a Charge of Discrimination with the EEOC. After receiving the requisite "Right to Sue" letter from the EEOC, the three Plaintiffs jointly filed the Complaint on June 11, 1993.

In their Complaint filed with this court, Plaintiffs state that they were repeatedly subjected to the following race and age-based slurs by Wydajewski: (1) "boy"; (2) "if you had the energy of whites, you'd be doing your jobs"; (3) "I will be a thorn in your side for the next 20 years. Someone is waiting for your job"; (4) "I don't want blacks running machines"; (5) "If you people want to be treated like kids, I'll treat you like kids"; (6) "Once I get rid of you old guys, I can get on with running this business the way I want." However, Plaintiffs' three deposition witnesses testified that they never heard Wydajewski make any age or race related comments. All three witnesses were of Hispanic descent. In addition, Azcon deposed two African–Americans, both over the age of 40, and both of whom Wydajewski hired. Both deponents stated that they never heard Wydajewski make any age or race based derogatory comments.

As of September 16, 1992, just prior to the discharge of all three Plaintiffs, Azcon employed 29 people at its Hegewisch Yard. Of the 29 employees, 22 (76%) were over the age of 40, 10 (34%) were over the age of 50. In 1994, Azcon employed 27 people, 20 (74%) of whom were over the age of 40, and 8 (30%) of whom were over the age of 50. Wydajewski hired only four employees while acting as yard superintendent: Dan Young, a 51–year–old African–American; Mack Cooper, a 45–year–old African–American; Jesus Rosas, a 38–year–old Hispanic; and Leonard Wydajewski, a 17–year–old Caucasian, presumably a relative.

## II. DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Salima v. Scherwood South, Inc.,* 38 F.3d 929, 931 (7th Cir.1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Summary judg-

ment is not a discretionary remedy, it must be granted when warranted. *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir.1994) (per curiam). In making a motion for summary judgment, the burden rests with the moving party to demonstrate an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir.1994).

 Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Associated Milk Producers, Inc. v. Meadow Gold Dairies*, 27 F.3d 268, 270 (7th Cir.1994), the non-moving party may not rest on its pleadings to create a genuine issue. *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991). Rather, the non-moving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to designate specific facts showing a genuine issue for trial. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). Presenting merely a scintilla of evidence will not suffice to oppose a motion for summary judgment. *Walker v. Shansky*, 28 F.3d 666, 671 (7th Cir.1994). The non-movant must cast more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Moreover, the disputed facts must be those that might affect the outcome of the suit to properly preclude summary judgment, *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir.1992); a dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

 The court now turns its attention to the merits of the motion. In general, an employee may be terminated for "any reason, good or bad, or for no reason at all, as long as the employer's reason is not proscribed by a Congressional statute." *Kahn v. Secretary of Labor*, 64 F.3d 271, 278 (7th Cir.1995). The Americans With Disabilities Act and Title VII are examples of such proscriptive statutes. The ADEA[4] makes it unlawful for employers to engage in the following conduct:

(1) [T]o fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or (3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623(a). The prohibitions under ADEA apply only to those who have attained the age of forty or older. 29 U.S.C. § 631(a). Any person who is in this protected class and is discriminated against based on age may commence a civil action for legal or equitable relief. 29 U.S.C. § 626(c)(1). Under Title VII of the Civil Rights Act of 1964, an employer may not lawfully "discharge any individual ... because of such individual's race." 42 U.S.C. § 2000e–2(a)(1).

 To establish liability under the ADEA and Title VII, a plaintiff must prove that age and race, respectively, accounted for the employer's decision to terminate the plaintiff. In other words, the issue is whether the same events would have transpired if the employee had been younger than forty or another race. *Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir.1994). A plaintiff, however, need not prove that his age or race was the only factor in the employer's decision to discharge. *Sarsha v. Sears, Roebuck &*

---

4. Congress enacted the ADEA primarily to "promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). "The ADEA, enacted in 1967 as part of an ongoing congressional effort to eradicate discrimination in the workplace, reflects a societal condemnation of invidious bias in employment decisions. The ADEA is but part of a wider statutory scheme to protect employees in the workplace nationwide." *McKennon v. Nashville Banner Publishing Co.*, — U.S. ——, ——, 115 S.Ct. 879, 886, 130 L.Ed.2d 852 (1995).

*Co.,* 3 F.3d 1035, 1038 (7th Cir.1993). Rather, an ADEA plaintiff is only required to prove that he would not have been terminated "but for" his age, and a Title VII plaintiff need only prove that he would not have been terminated "but for" his race. *Fisher v. Transco Serv. Milwaukee, Inc.,* 979 F.2d 1239, 1243 (7th Cir.1992).

■ There are two methods of proof available to a plaintiff to demonstrate unlawful age and race discrimination. The first method of proof, the direct method, includes the use of direct evidence tending to evince that a plaintiff's race or age was a substantial factor in the discharge decision. *Konowitz v. Schnadig Corp.,* 965 F.2d 230, 232 (7th Cir. 1992). The second method of proof, commonly known as the burden-shifting or inferential method, is outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[5] In the instant motion, no evidence exists to sufficiently prove that Plaintiffs' ages and races were a "but for" factor in Azcon's decision to terminate them. Thus, the direct method of proof is inapplicable in the instant case, and the court uses the *McDonnell Douglas* burden-shifting analysis.

■ There are three phases to the burden-shifting method. In both race and age discrimination, the initial burden of satisfying the first phase is on the plaintiff. The Plaintiffs here must establish a *prima facie* case of discriminatory discharge by demonstrating that (1) they were members of a protected class (persons over forty or a racial minority), (2) they were performing their job well enough to meet Azcon's legitimate expectations, (3) they were discharged or subjected to a materially adverse employment action, and (4) "that the position was either left open or filled by a [younger employee or Caucasian]." *St. Mary's Honor Center v. Hicks,* — U.S. —, —, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). For age discrimination, Plaintiffs can satisfy the fourth element by proving that Azcon treated youn-

ger, but otherwise similarly-situated, employees more favorably. *Lenoir v. Roll Coater, Inc.,* 13 F.3d 1130, 1132 (7th Cir.1994).

■ The establishment of a *prima facie* case creates a rebuttable presumption that the employer's decision to terminate was the result of impermissible factors. *Rand v. CF Indus., Inc.,* 42 F.3d 1139, 1144 (7th Cir.1994). This rebuttable presumption shifts the burden (one of production as opposed to persuasion) to the employer to "articulate a legitimate, nondiscriminatory reason for the discharge." *Kahn,* 64 F.3d 271 at 278. This is the second phase of the shifting method. The employer "need not persuade the court that it was actually motivated by its proffered reasons." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Rather, the employer is only required to submit any lawful justification for the termination in question. *Id.* If the employer fails to offer a legitimate, non-discriminatory reason for its decision to terminate, judgment must be entered against the employer and in favor of the plaintiff. *Id.*

■ If, however, the employer satisfies the second phase, the rebuttable presumption is dissolved and the burden of persuasion, not merely production, shifts back to the plaintiff for the third phase. *Loyd v. Phillips Bros., Inc.,* 25 F.3d 518, 523 (7th Cir.1994). The third phase requires the plaintiff to show that the employer's proffered explanation for the termination amounts to nothing more than a mere pretext for discrimination. *Fisher,* 979 F.2d at 1243. To meet this burden of production, the plaintiff may either persuade the court that, more likely than not, the discriminatory reason motivated the employer or that the purported explanation is unworthy of credence. *Burdine,* 450 U.S. at 257, 101 S.Ct. at 1095–96. Thus, under the burden-shifting approach, if a plaintiff convinces the trier of fact that it is more likely than not that the employer did not act for its proffered rea-

---

5. While the burden-shifting method was originally framed by the *McDonnell* Court to address actions arising under the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* the method was adopted by the Seventh Circuit to govern ADEA claims. *Oxman v. WLS–TV,* 846 F.2d 448, 452 (7th Cir.1988); *Ayala v. Mayfair Molded Prods. Corp.,* 831 F.2d 1314, 1318 (7th Cir.1987); *Tice v. Lampert Yards, Inc.,* 761 F.2d 1210, 1212 (7th Cir.1985).

sons, then the employer's decision remains unexplained and the inferences from plaintiff's evidence may be sufficient to prove the ultimate fact of discriminatory intent. *Oxman v. WLS–TV*, 12 F.3d 652, 657 (7th Cir. 1993) (quoting *Ayala*, 831 F.2d at 1319). However, in a case in which two or more motives were said to be operative in the employer's decision to fire an employee, the employee cannot prevail in a suit against the employer if a lawful reason alone would have sufficed to justify the firing. *McKennon v. Nashville Banner Publishing Co.*, ⸺ U.S. ⸺, ⸺, 115 S.Ct. 879, 886, 130 L.Ed.2d 852 (1995) (citing *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 284–87, 97 S.Ct. 568, 574–76, 50 L.Ed.2d 471 (1977).

First, the court addresses the merits of Davis' claim. Azcon argues that Davis failed to establish his prima facie case in both the age and race discrimination claims. The court agrees.

■■■ Davis does satisfy the first and third requirements of the *prima facie* case—that is, Davis is a member of both protected classes, and Azcon did take an adverse action against him. With regard to the third element, construing the facts in a light most favorable to Davis, the court assumes that his job performance was satisfactory. Whether Davis was sleeping is a disputed issue of material fact necessary to determine whether Davis' job performance was satisfactory.[6] Notwithstanding, Davis has not provided any evidence to prove the fourth element of the *prima facie* case. Once Davis was terminated, Wydajewski replaced him with Turner, a 62–year–old African–American. Contrary to Davis' contentions, the evidence shows that he was replaced by an older member within his same age classification, and by a member of his same race. Thus, Davis has failed to establish a *prima facie* case, and the court enters judgment against him and in favor of Azcon.

■■■ Assuming *arguendo* that Davis had established the prima facie case, he still would not prevail. Azcon has proffered a legitimate, non-discriminatory reason for its termination of Davis; Davis was asleep during work hours and, therefore, was not doing that which he was paid to do—work. The simple articulation of this reason is enough to satisfy Azcon's burden. "Once the employer articulates a legitimate reason for discharge, the presumption shifts—it is assumed that [Azcon] did not discriminate—and [Davis] must demonstrate the [Azcon's] stated reason was pretextual, and that [Azcon's] real reason for the discharge was [age or] race discrimination." *Campbell v. AT & T Communications, Inc.*, No. 91 C 8296, 1994 WL 380620, at *4 (N.D.Ill. July 18, 1994). Davis has not made such a demonstration. Davis relies upon (1) the statements made by himself and his fellow Plaintiffs suggesting that Wydajewski used race-based and age-related derogatory comments, and (2) his own denial of the conduct for which he was terminated, sleeping. However, the allegations of racial and age based slurs are both unsubstantiated and are contradicted by the deposition testimony of former co-workers. Moreover, Davis' self-serving denial that he slept on the job is not enough to defeat a summary judgment motion. In support of his denial, Davis states that a "reasonable jury could find that [he] was merely taking a customary break when there was no work available," and that a "reasonable jury could also find that Wydajewski merely saw [Davis] sitting down and not sleeping as he alleges." However, Davis' own statements and speculation as to what a reasonable jury might find are insufficient:

> It is not enough for [the plaintiff] simply to assert that the alleged grounds for [his] termination did not occur. The court's inquiry into pretext focuses not on the actual occurrence of the alleged acts, *Timm v. Mead Corp.*, 32 F.3d 273, 275 (7th Cir.1994), but rather looks at "whether the employer honestly believes in the reason it offers." *Kralman v. Illinois Dept. of Veteran's Affairs*, 23 F.3d 150, 156 (7th Cir. 1994) (citing *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir.1992)). Moreover, the issue of pretext "does not address the correctness or desirability of reasons offered for employment decisions." *Id.*

---

**6.** This court, not being the trier of fact, is without the power to resolve such a dispute, and must find that third element is satisfied for summary judgment purposes.

*Szydlowski v. Archibald Candy Corp.*, 1995 WL 68751 1995 U.S.Dist. LEXIS 1862 (N.D.Ill. Feb. 15, 1995). To establish that the employer's reasons for the termination is a subterfuge for discrimination, "[i]t is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible ... [rather] he must show that the explanation is 'a phony reason.' " *Pignato v. Am. Trans Air, Inc.*, 14 F.3d 342, 349 (7th Cir.1994). Therefore, whether a reasonable jury would find that Davis was not sleeping and was simply sitting down taking a customary break is irrelevant to the instant case. Equally as irrelevant is whether a reasonable juror would deem Davis' punishment, termination, as too harsh. Rather, the issue is whether Azcon's reason for firing Davis was "phony."

Davis did not provide sufficient evidence to create a genuine issue of material fact as to whether Azcon treated him differently from younger non-African-American workers out of age-related or racial animus. Simply put, no facts exist to show that Azcon terminated Davis because of his race or because of his age rather than because of sleeping. Of the many employees at Hegewisch Yard, the figures in the record demonstrate that Azcon frequently hired African–Americans as well as other minorities. Moreover, the unrebutted statistics show that more than three-fourths of the employees at Hegewisch Yard were over 40, and more than one-third were over the age of 50. From these facts, the only reasonable inference that can be drawn is that Azcon did not discriminate based on age or race.

■ In addition to these facts, the arbitrator found that Davis was terminated for just cause and not for unlawful reasons or reasons disallowed by the CBA. Although the arbitrator's findings do not have *res judicata* or collateral estoppel effect, *McDonald v. City of West Branch*, 466 U.S. 284, 287, 104 S.Ct. 1799, 1801, 80 L.Ed.2d 302 (1984), they are not without significance. The arbitrator rendered his findings after a fair hearing in which Davis had an opportunity to "state his case" and confront his accusers. Yet, the arbitrator found him to be incredible and determined that Azcon's justification for

firing Davis was fair. Totaling the only evidence submitted for this motion, the court finds that Davis produced no evidence from which a reasonable juror could find that the proffered reason was pretextual. Accordingly, even if the court were to hold that Davis established a *prima facie* case, which it does not, the court would still enter judgment against Davis and in favor of Azcon.

The court next addresses the merits of Pollard's claim. The court finds that Pollard satisfied his initial burden by producing enough evidence to establish a *prima facie* case. Pollard, an African–American, was above 40 at the time of his discharge. Therefore, the first element of the prima facie case is satisfied. The court finds that the second element involves a disputed issue of material fact, and refuses to make the factual determination of whether Pollard worked in a satisfactory manner. Therefore, as for summary judgment, Pollard satisfies the second element.

■ Pollard has also shown that he suffered a materially adverse employment action. Although this circuit has not made a precise definition of a materially adverse employment action, the circuit has stated that such an action must be a change in the terms or conditions of employment beyond "a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty National Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir.1993). In the case *sub judice*, Azcon reinstated Pollard retroactively, including restoring Pollard to the same seniority status and giving him the same benefits. However, Pollard still received a 30-day suspension without pay. This suspension equates to a materially adverse action taken by Azcon, and the third element of the *prima facie* case is met.

■ With regard to the fourth *prima facie* element, Azcon admits that "no one employee was assigned to Pollard's job...."

(Memorandum in Support of Summary Judgment, p. 15.) Thus, although there is no evidence that Azcon treated non-African-American, younger employees more favorably, Pollard has satisfied the fourth element, thus establishing a prima facie case of both racial and age discrimination. A presumption of discrimination results.

In response, Azcon articulated its single reason for discharging Pollard; Pollard slept on the job. The initial presumption is now dissolved, and a new presumption is created—that is, a presumption that Azcon acted lawfully.

■ Pollard's claim fails at the third phase of the burden-shifting method of proving race and age discrimination. For the same reasons the court discussed with regard to Davis, the court finds no evidence to suggest that Azcon's proffered reason is "phony." In addition to the aforementioned facts, the court also acknowledges the arbitrator's finding that Pollard was indeed sleeping. The arbitrator determined that the form of punishment prescribed by Azcon was too severe, and reduced the indefinite suspension to a 30-day suspension. However, as already stated, this court need not determine whether Azcon's "reason given for a job action is not just, fair or sensible; rather, the court must determine whether evidence exists from which a reasonable juror could find that Azcon's explanation is a phony reason." *Pignato v. American Trans Air, Inc.*, 14 F.3d 342, 349 (7th Cir.1994). The court finds that no such evidence exists. Accordingly, the court enters judgment against Pollard and in favor of Azcon.

■ Third, the court addresses the merits of Turner's claim. Much like the other two Plaintiffs, Turner satisfied the first element of the prima facie case since he has shown that he is a 62–year–old African-American. Moreover, Turner has met his burden of proving the third element given that the facts are undisputed as to his discharge. However, Turner fails to produce facts to sustain the second and fourth prongs of the "prima facie ladder." *See Crady*, 993 F.2d at 134. Contrary to Turner's own testimony, the facts show that he did not perform in a satisfactory manner. Rather, the record evinces that Turner reported to work late on one occasion without explanation and, without giving appropriate notice to Azcon, neglected to attend work on three occasions. Wydajewski gave Turner written warnings on each occasion. After the third written warning, Wydajewski cautioned Turner that a fourth absence could result in a discharge. After Turner did not report to work on October 9, 1992, Wydajewski followed through on his threat, and terminated Turner.[7] Turner argues that the he did give notice regarding the fourth, and final, work absence. However, this argument is founded solely on his own testimony.[8] Moreover, even assuming *arguendo* that the final absence was justified and subsequent to proper notice, the three earlier absences without notice show that Turner did not meet Azcon's legitimate expectations. *See Troupe*, 20 F.3d at 736–37 (stating that "because of [plaintiff's] tardiness, she could not show that she met the employer's requirements for her job, and thus could not raise an issue of pretext.").

■ In addition to his failure to prove the second element, Turner also failed to establish the fourth part of the *prima facie* case of race discrimination.[9] DeHaro, of

7. "If the company did not fire [him], its warnings and threats would seem empty. Employees would be encouraged to flout work rules knowing that the only sanction would be a toothless warning or a meaningless period of probation." *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 737 (7th Cir.1994).

8. The record is devoid of any evidence other than Turner's testimony to support his contention that he provided notice to Azcon. Yet, this simple self-serving assertion does not create an issue of fact. The affidavits or Turner's testimony in comparison to the totality of the evidence

amounts to a mere scintilla, that amount which is insufficient to show the existence of a genuine issue of material fact. *Walker v. Shansky*, 28 F.3d 666, 671 (7th Cir.1994).

9. Turner did prove the fourth element regarding the age discrimination claim. DeHaro was 45–years–old. While Turner need not prove that persons who are not members of the protected class replaced him or that they received favorable treatment, *Kralman v. Ill. Dept. of Veterans' Affairs*, 23 F.3d 150, 154–55 (7th Cir.1994), he must at a minimum prove that employees younger than he, who may or may not be over forty

Hispanic descent, replaced Turner. Since Turner was replaced by another member of a protected class, he cannot meet the fourth element of the prima facie case. Thus, since Turner did not produce facts to establish the second element with regard to the age and race discrimination counts, and additionally did not establish the fourth element with regard to the race discrimination claim, the court finds that Turner did not prove a prima facie case of discrimination. Accordingly, the court enters judgment in favor of Azcon and against Turner.

Yet, even if the court were to find that Turner created an inference of discrimination, the court would still enter judgment against Turner. Azcon proffered a legitimate, non-discriminatory reason for terminating Turner—Turner's failure to report to work without giving notice. Therefore, the final burden would rest upon Turner to prove that Azcon's reason was pretextual. This burden cannot be met. Turner produced no evidence to suggest that he was fired for any reason other than his tardiness and unreliability. As already discussed, Plaintiffs' allegations of age and race-related derogatory slurs remain unfounded. Contrary to Turner's allegations of age and racial discrimination, the statistics and figures show that Azcon often hired minorities and older men. In sum, the court finds that Turner could not have met its burden of proof assuming that he had first established a prima facie case of age and race discrimination. Accordingly, the court enters judgment against Turner and in favor of Azcon.

### III. *CONCLUSION*

For the foregoing reasons, Azcon's motion for summary judgment is granted. The court finds that Azcon did not engage in unlawful age or race discrimination in terminating Plaintiffs as a matter of law. The court enters judgment in favor of Azcon and against Davis, Pollard and Turner.

IT IS SO ORDERED.

years of age, replaced him or received favorable treatment. *Id.*