**Beldya L. MITCHELL, and Geraldine W. Savoy, Plaintiffs,**

v.

**SISTERS OF CHARITY OF the INCARNATE WORD, Houston, Texas, a/k/a ST. Elizabeth Hospital, Defendant.**

**Civil Action No. H–94–3674.**

United States District Court,
S.D. Texas,
Houston Division.

March 12, 1996.

Sheila Beth Owsley, David Joseph Guillory, Houston, Texas, for Plaintiffs.

Barbara L. Johnson, Wickliff & Hall, Houston, Texas, for Defendant. ˙

## ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

STACY, United States Magistrate Judge.

Pending before the Court is Defendant's Motion For Judgment As A Matter Of Law, filed November 3, 1995. (Document No. 36). In support of its motion, Defendant argues that it is entitled to judgment as a matter of law regarding Plaintiffs' claims that Defendant failed to promote them in violation of the Age Discrimination in Employment Act. Specifically, Defendant contends that Plaintiffs failed to present sufficient evidence to establish the third and fourth prongs of their prima facie case. (Document No. 36 at 2). Additionally, Defendant argues that in response to Defendant's offer of legitimate, non-discriminatory reasons for its employment decisions regarding Plaintiffs, Plaintiffs failed to establish that these proffered reasons were a pretext for age discrimination. Furthermore, Defendant asserts that based on Plaintiffs' failure to mitigate their damages, they are not entitled to an award of back pay, reinstatement, or front pay.

In response, Plaintiffs maintain that, based on the jury's finding of discrimination in violation of the Age Discrimination in Employment Act, Plaintiffs are entitled to back pay, and either reinstatement or front pay.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Beldya L. Mitchell ("Mitchell") began her employment with Defendant Sisters of Charity Of The Incarnate Word, Houston, Texas, a/k/a St. Elizabeth Hospital ("St. Elizabeth") as an EDP or key punch operator on August 15, 1968, and continued her employment until her termination on February 4, 1994 at age 67. Plaintiff Geraldine W. Savoy ("Savoy") began her employment with St. Elizabeth on June 17, 1968 also as an EDP operator. At the time of trial, Savoy was still employed with St. Elizabeth but contended that she was under the threat of imminent discharge. On December 6, 1995, Savoy was notified that her employment with St. Elizabeth would be terminated

effective December 29, 1995. It is undisputed that both Mitchell and Savoy satisfactorily performed their EDP Operator duties.

In 1991, St. Elizabeth initiated a system conversion to an upgraded computer system which necessitated the training of all existing EDP Operators to perform the essential functions of the new system. Plaintiffs contended that during the period between 1992 and 1993, their requests to receive the training were ignored while younger staff members were encouraged to participate in formal training classed provided by Defendant. Tr.[1] Day 2, Vol. I at 9, 19, 38, 61; Day 2, Vol. II at 91, 103, 105, 153, 156, 160, 163.

Upon the consent of the parties, this case was tried to a jury on October 16, 1995. On October 20, 1995, the case was submitted to the jury on 10 jury questions. The jury returned its verdict on October 23, 1995, making the following findings:

Jury Question 1. Do you find from a preponderance of the evidence that the Plaintiff Mitchell's age was a determining factor in the Defendant's decision not to train and promote her?

Answer "Yes" or "No"

Answer: Train: Yes

Promote: Yes

Jury Question 2. Do you find from a preponderance of the evidence that the Defendant's decision not to train and promote Plaintiff Mitchell because of her age was willful?

Answer "Yes" or "No"

Answer: Train: Yes

Promote: Yes

Jury Question 3. Do you find from a preponderance of the evidence that the Plaintiff Savoy's age was a determining factor in the Defendant's decision not to train and promote her?

Answer "Yes" or "No"

Answer: Train: Yes

Promote: Yes

Jury Question 4. Do you find from a preponderance of the evidence that the Defendant's decision not to train and

promote Plaintiff Savoy because of her age was willful?

Answer "Yes" or "No"

Answer: Train: Yes

Promote: Yes

Jury Question 5. Do you find from a preponderance of the evidence that the Plaintiff Mitchell's age was a determining factor in the Defendant's decision to discharge her?

Answer "Yes" or "No"

Answer: Yes

Jury Question 6. Do you find from a preponderance of the evidence that the Defendant's decision to discharge Plaintiff Mitchell because of her age was willful?

Answer "Yes" or "No"

Answer: Yes

Jury Question 7. Do you find from a preponderance of the evidence that the Plaintiff Savoy's age was a determining factor in the Defendant's decision to discharge her?

Answer "Yes" or "No"

Answer: Yes

Jury Question 8. Do you find from a preponderance of the evidence that the Defendant's decision to discharge Plaintiff Savoy because of her age was willful?

Answer "Yes" or "No"

Answer: Yes

Jury Question 9. What amount of back pay, if any, did Plaintiff Mitchell lose as a result of Defendant's discriminatory acts?

Answer in dollars and cents.

Answer: $31,130.19.

Jury Question 10. What amount of back pay, if any, did Plaintiff Savoy lose as a result of Defendant's discriminatory acts?

Answer in dollars and cents.

1. Tr. refers to the Transcript of the trial proceedings in this matter.

Answer: $13,244.00

Tr. October 23, 1995, Jury Verdict.

## II. *EVIDENCE OF AGE DISCRIMINATION*

The Age Discrimination in Employment Act ("ADEA") makes it unlawful for employers "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). To succeed on his claim, a plaintiff must prove both that he was discharged and that his age had "a determinative influence on the outcome." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993).

Generally, a prima facie ADEA case of failure to promote consists of evidence that the plaintiff (1) was within a protected age group; (2) that he was adversely affected (in this case, discharged), (3) that he was qualified for the position; and (4) that the job remained open or was filled by someone outside the protected class. *Lindsey v. Prive Corporation, d/b/a Cabaret Royale,* 987 F.2d 324, 326 (5th Cir.1993) (citing *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503 (5th Cir.1988)). It is well established that conclusory statements and subjective beliefs that an employer's actions are based on age cannot support an ADEA claim. *Laurence v. Chevron, U.S.A., Inc.,* 885 F.2d 280, 285 (5th Cir.1989); *Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 566 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984).

Once the plaintiff has established a prima facie case, the burden of production then shifts to the defendant-employer to articulate legitimate non-discriminatory reasons for its employment decision. An employer may sustain this burden by introducing admissible evidence of an explanation that would be "legally sufficient to justify a judgment for the defendant." *Bohrer v. Hanes Corp.,* 715 F.2d 213, 218 (5th Cir. 1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984). The employer need not persuade the court that its proffered reason actually motivated its decision, but the defendant's evidence must raise a "genuine issue of fact" as to whether it discriminated against the plaintiff. *Bohrer,* 715 F.2d at 218.

If the defendant-employer presents non-discriminatory reasons, the plaintiff has the burden of persuading the factfinder that those reasons are pretexts for unlawful discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 512–22, 113 S.Ct. 2742, 2750–55, 125 L.Ed.2d 407 (1993); *Thornbrough v. Columbus & Greenville R.R. Co.,* 760 F.2d 633, 646 (5th Cir.1985). The plaintiff can establish pretext by introducing evidence to prove that the reason stated by the employer, "though facially adequate, was untrue as a matter of fact or was, although true, a mere cover or pretext" for illegal discrimination. *Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 566 (5th Cir. 1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984). In determining whether the employer's stated reason is false, the trier of fact may not disregard the defendant's explanation without countervailing evidence that it was not the real reason for the discharge. *Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 562 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984). "Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false: a mere shadow of a doubt is insufficient." *E.E.O.C. v. Louisiana Office of Community Services,* 47 F.3d 1438, 1444 (5th Cir.1995).

With the instant motion, St. Elizabeth contends that Plaintiffs failed to present sufficient evidence to establish the third prong of their prima facie case. Specifically, St. Elizabeth contends that there was "overwhelming evidence that Plaintiffs were not qualified for any of the three Process Control Operator ("PCO") positions available to existing employees." (Document No. 36 at 2). St. Elizabeth argues that because "Plaintiffs lacked the communication skills required to interface with the end-users of the Hospital's computer system," Plaintiffs were not qualified for the PCO positions. (Document No.

36 at 3). St. Elizabeth further asserts that Plaintiffs have failed to establish the fourth prong of the prima facie case. Specifically, St. Elizabeth maintains that "uncontroverted evidence established that one of the PCO positions was filled by someone within the protected age group...." (Document No. 36 at 3).

■ The Court finds that, based on the evidence proffered at trial, the Plaintiffs established their prima facie case for age discrimination. Specifically, Mitchell produced evidence that, at the time of her discharge, she was 67 years old, had worked with St. Elizabeth for 26 years, had received favorable reviews throughout her employment, had performed her job more than adequately, and that St. Elizabeth replaced Mitchell with individuals who were younger and who had less experience. Tr. Day 2, Vol. I at 61, Day 2 Vol. II at 105, 150; *See Ramirez v. Allright Parking El Paso, Inc.,* 970 F.2d 1372, 1377 (5th Cir.1992).

■ Likewise, with regard to Plaintiff Savoy, the Court finds substantial evidence in the record to support Savoy's prima facie case of age discrimination. Savoy began her employment with St. Elizabeth on June 17, 1968, over 25 years ago. During her employment with St. Elizabeth, Savoy received favorable reviews, and performed her job more than adequately. Furthermore, Savoy upon learning of the system conversion and having faced delays in receiving the necessary training, sought training outside the work place to operate the new upgraded system so that she might continue her employment with the Defendant. Tr. Day 2, Vol. II at 150, Testimony of Savoy.

Specifically, with regard to Defendant's argument that Plaintiffs did not possess the requisite credentials for the PCO positions, the Court finds substantial evidence to the contrary. Testimony of William D. Carrington, Tr. Day 3, Vol. I at 62–63, Vol. II at 192, Testimony of Georgia Green, Day 2, Vol. II at 98–105, Testimony of Betty Menard, Day 2 Vol. I at 80–82 & Vol. II at 83–93. The evidence proffered at trial demonstrated that Plaintiffs possessed at least the basic skills for the PCO positions. With adequate training, Plaintiffs could have acquired the requisite skills for the PCO position. Defendant's argument that those chosen for the PCO positions were academically more qualified is likewise without merit. Plaintiffs both indicated an independent desire to further their knowledge of computers and programming. Plaintiff Savoy took the initiative to enroll in classes to further her education. In fact, both Plaintiffs testified that they were excited about learning something new and looked forward to training on the new system.

■ With regard to Defendant's argument that Plaintiffs have failed to establish the fourth prong of the prima facie case, the Court finds that said argument is also without merit. In an age discrimination case, an employee can satisfy the fourth element of the prima facie case, i.e., that the position was either left open or filled by a person outside the protected class, by showing that the employer treated younger, but otherwise similarly situated employees more favorably. *Pollard v. Azcon Corp.,* 904 F.Supp. 762, 769 (N.D.Ill.1995) (*citing Lenoir v. Roll Coater, Inc.,* 13 F.3d 1130, 1132 (7th Cir.1994)). The record clearly establishes that Plaintiffs were denied training to their detriment and to the benefit of younger and less qualified employees. By virtue of this denial of training, Plaintiffs were not afforded the opportunity to become appropriately "qualified" for the new PCO positions. Arguably, even without the appropriate training for the PCO positions, Plaintiffs had at least the basic skills to qualify for the PCO positions. Additionally, Defendant argues that because one of the PCO positions was filled by one member of the age protected class, Plaintiffs have failed to establish their prima facie case. However, the fact that a person promoted to a position sought by a plaintiff is a member of the same protected class as the plaintiff does not bar the plaintiff from establishing a prima facie case of discrimination. *Douglas v. Anderson,* 656 F.2d 528, 532 (9th Cir.1981); *Diaz v. American Telephone & Telegraph,* 752 F.2d 1356, 1360 (9th Cir.1985); *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1013, n. 9 (1st Cir.1979). In the instant case, it is undisputed that one of the PCO positions was filled by Diane Buenik, a person within the protected age group. However, this alone is insufficient to

bar the Plaintiffs from establishing a prima facie case. Ms. Buenik, in her position as department secretary, knew of the training program and how to sign up for it, was in the best position to receive the training, and was provided the necessary training. On the other hand, Plaintiffs inquired about receiving the necessary training but were constantly disregarded, and training materials were concealed from them by the employer. Based on the foregoing, the Court finds that Defendant's contention that Plaintiffs have failed to establish their prima facie case is without merit.

Once Plaintiffs established their prima facie case, the burden shifted to the Defendant to articulate a legitimate nondiscriminatory reason for their decision. If a non-discriminatory reason was articulated, it was not found credible by the jury who found that Defendant's stated reason was merely a pretext for unlawful discrimination. *See Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 566 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984).

 St. Elizabeth maintains that even if Plaintiffs had offered sufficient evidence to establish their prima facie case, St. Elizabeth articulated a legitimate, non-discriminatory reason for its decision not to promote Plaintiffs. Specifically, St. Elizabeth notes that Plaintiffs were not chosen for the PCO positions as other applicants who were chosen were more qualified. This argument is without merit as it was Defendant's refusal to train Plaintiffs which denied Plaintiffs the "qualifications" to operate the new system. Additionally, Plaintiffs offered the testimony of Bill Carrington as evidence of pretext. Mr. Carrington testified that Anita Johnson, the technical systems manager, had stated to him in February, 1993 that she was "getting rid of the old bunch" and that she questioned the Plaintiffs' ability to run the system because they were too old: "She said, and this is a quote, she said, 'oh, come on.' She said, 'can you see Beldya and Jerry running the new system.' They're too old." Testimony of William D. Carrington, Tr. Day 3, Vol. I at 99–100. Based on the foregoing, the Court finds that Plaintiffs met their burden at trial

of establishing a prima facie case of age discrimination.

### III. EVIDENCE OF WILLFUL DISCRIMINATION

 A violation of the ADEA is willful if the defendant-employer acts with knowledge or with "reckless disregard" of the requirements of the ADEA. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 128–29, 105 S.Ct. 613, 625–26, 83 L.Ed.2d 523 (1985); *Normand v. Research Institute of America, Inc.,* 927 F.2d 857, 865 (5th Cir.1991). A finding of willfulness is important because it entitles the plaintiff to liquidated damages. *Hansard v. Pepsi–Cola Metropolitan Bottling Co.,* 865 F.2d 1461, 1470 (5th Cir.1989). However, "liquidated damages are a punitive sanction and should be reserved for the most egregious violations of the ADEA." *Hansard,* 865 F.2d at 1470; *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125, 105 S.Ct. 613, 623, 83 L.Ed.2d 523 (1985). An employer acting in good faith, with reasonable grounds for believing that its conduct would not violate the ADEA is not acting "willfully" and is not liable for liquidated damages. The mere fact that an employer knows that the ADEA is "in the picture," in the sense that the statute might apply to its actions, is insufficient to support an award of liquidated damages. *See e.g. McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

 In *Shattuck v. Kinetic Concepts, Inc.,* the Court held that the evidence was sufficient to support a finding of willful age discrimination where a statement that a former employee was not promoted because the position was too demanding for someone of his age was relevant to the motivation for the subsequent discharge, where the former employee testified to a post-termination conversation in which the individual who received the promotion attributed the firing of former employee to his failure to conform to a youthful corporate image, and to a memorandum he wrote regarding age-related comments. 49 F.3d 1106, 1108–10 (5th Cir.1995). In the instant case, the evidence sustains the jury finding that Defendant "willfully" violated the ADEA by terminating Mitchell, a 67 year

old employee, who was replaced by a younger employee. The trial record contains statements by company officials that they were "going to get rid of the old bunch" and that they considered the Plaintiffs to be incapable of operating the new system. Testimony of William D. Carrington, Tr. Day 3, Vol. I at 62–63, Vol. II at 192. *See also, Ramirez v. Allright Parking El Paso, Inc.,* 970 F.2d 1372, 1378 (5th Cir.1992). The Court finds that there is sufficient evidence in the trial record to substantiate the jury's finding of willfulness on the part of the Defendant. Once a jury properly finds a willful violation, an award of liquidated damages is mandatory and the court lacks discretion to reexamine whether the employer acted in good faith. *Powell v. Rockwell International Corp.,* 788 F.2d 279 (5th Cir.1986). Once the jury finds that the employer's violation was willful, each of the plaintiffs is entitled to an award of liquidated damages equal to the amount that the jury awarded that plaintiff in actual damages. *Babb v. Sun Co.,* 562 F.Supp. 491 (D.C.Minn.1983).

Congress created a "two-tiered liability scheme" under the ADEA by providing that "some but not all ADEA violations would give rise to liquidated damages." *Biggins,* 507 U.S. at 614, 113 S.Ct. at 1708. Section 7(b) of the ADEA provides for liquidated damages in the event of a willful violation. 29 U.S.C. § 626(b).

 The ADEA liquidated damages provision provides, in part:

Amounts owing to a person as a result of a violation of this Chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of Section 216 and 217 of this Title; Provided, that liquidated damages shall be payable

only in cases of willful violations of this Chapter. In any action brought to enforce this Chapter, the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this Chapter, including without limitation judgments compelling employment, reinstatement, or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

29 U.S.C. § 626(b). The liquidated damages provision of the ADEA does not require the doubling of the front pay award. *Olitsky v. Spencer Gifts, Inc.,* 964 F.2d 1471, 1479 (5th Cir.1992). " 'Front pay' may be recoverable as well, but it cannot figure in the calculation of liquidated damages." *Olitsky v. Spencer Gifts, Inc.,* 964 F.2d 1471, 1479 n. 26) (*citing Wheeler v. McKinley Enters.,* 937 F.2d 1158, 1163 n. 2 (6th Cir.1991)). "By the express terms of the statute, liquidated damages are an additional amount equal to the back pay and benefits award," and thus do not include front pay. *Cassino v. Reichhold Chems., Inc.,* 817 F.2d 1338, 1348 (9th Cir.1987), *cert. denied,* 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988).

 The measure of liquidated damages recoverable for a willful violation is the sum of amounts owing to the plaintiff as a result of the violation. Amounts owing include unpaid wages and benefits but do not include damages for pain and suffering. Thus the provision for liquidated damages effectively doubles the award of back pay and benefits. *Buchholz v. Symons Mfg. Co.,* 445 F.Supp. 706 (D.C.Wis.1978).

In the instant case, the jury awarded Plaintiff Mitchell back pay in the amount of $31,130.19.[2] Similarly, Plaintiff Savoy was

---

**2.** The amount of back pay sought by Mitchell is calculated as follows: From the time the PCO positions were created in October, 1993 to the date of her termination in February, 1994, represents $1,135.20 of the back pay sought. This amount is the difference between what Mitchell was making, $9.35 per hour, and what she would have made in the PCO position, $11.00 per hour. The additional $38,786 is for the time period from February, 1994, the date of Mitchell's discharge, to the date of trial, October, 1995, calculated at $1,892 per month at an hour wage rate of $11.00. Thus, Mitchell sought back pay total-

ling $39,921.20. Testimony of Mitchell, Tr. Day 3, Vol. I at 33. The jury was instructed that "Back pay is the amount equal to the pay that the Plaintiffs would have received from the Defendant if they had become Process Control Operators until the date of trial. You should deduct from this sum whatever wages the Plaintiffs have obtained or earned from other employment during the same period." Jury Instruction No. 15, Tr. Day 5, Vol. II at 160. Based on the foregoing, the jury decided to award Mitchell $31,-130.19.

awarded back pay in the amount of $13,244.[3] Because the measure of liquidated damages recoverable for a willful violation of the ADEA is the sum of amounts owing to the plaintiff as a result of the violation and is, in most instances, the amount of the back pay awarded, the Court finds that Plaintiffs are entitled to liquidated damages in an amount equal to their respective award of back pay.

## IV. *FRONT PAY IS APPROPRIATE BECAUSE REINSTATEMENT IS NOT FEASIBLE*

The purpose of the ADEA remedies is to make the victim of age discrimination whole. The most obvious way to make a plaintiff whole is to award back pay denied by the termination and then reinstate the plaintiff, thereby negating the effect of the unlawful termination. The Fifth Circuit continues to recognize the decided preference to award reinstatement in lieu of front pay for a discriminatory discharge in violation of the ADEA. *Deloach v. Delchamps, Inc.,* 897 F.2d 815, 822 (5th Cir.1990); *Hansard v. Pepsi–Cola Metro Bottling Co.,* 865 F.2d 1461, 1468–69 (5th Cir.1989) *cert. denied,* 493 U.S. 842, 110 S.Ct. 129, 107 L.Ed.2d 89 (1990). While reinstatement is generally preferred over front pay as a remedy, most courts agree that front pay is an appropriate alternative remedy when antagonism between the victim and the discriminatory employer makes reinstatement unfeasible. *Reneau v. Wayne Griffin & Sons, Inc.,* 945 F.2d 869 (5th Cir.1991); *O'Donnell v. Georgia Osteopathic Hospital, Inc.,* 748 F.2d 1543 (11th Cir.1984). Additionally, reinstatement is not preferred over front pay when there is no vacancy in the desired position. *Shore v. Federal Express Corp.,* 777 F.2d 1155 (6th Cir.1985). If the Court determines that reinstatement is not feasible, front pay is the appropriate remedy. *Id.* "The selection between reinstatement and front pay is discretionary with the trial court so long as the relief granted is consistent with the purposes of the ADEA." *Brunnemann v. Terra In-*

*tern., Inc.,* 975 F.2d 175, 180 (5th Cir.1992). Front pay may make the plaintiff whole by providing wages that plaintiff would have received, less any income derived from other compensation. However, front pay may be denied or reduced when the employee fails to mitigate damages by seeking other employment. *Reneau v. Wayne Griffin & Sons, Inc.,* 945 F.2d 869 (5th Cir.1991); *Hansard v. Pepsi–Cola Metro. Bottling Co.,* 865 F.2d 1461, 1469 (5th Cir.1988), *cert. denied,* 493 U.S. 842, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989).

Calculations of front pay cannot be totally accurate because they are prospective and necessarily speculative in nature. *Reneau v. Wayne Griffin & Sons, Inc.,* 945 F.2d 869 (5th Cir.1991); *Deloach v. Delchamps, Inc.,* 897 F.2d 815, 822 (5th Cir. 1990); *Burns v. Texas City Refining, Inc.,* 890 F.2d 747, 753 n. 4 (5th Cir.1989). "The courts must employ intelligent guesswork to arrive at the best answer." *Deloach,* 897 F.2d at 822. In determining when the front pay period ends, the Court generally considers the length of prior employment, the permanency of the position held, the nature of the work, the age and physical condition of the employee, possible consolidation of jobs, and other nondiscriminatory factors that could validly affect the possible post discharge employment relationship. *Reneau v. Wayne Griffin & Sons, Inc.,* 945 F.2d 869 (5th Cir.1991).

During their respective testimony, both Plaintiffs expressed their desire to return to work as a PCO at the appropriate wage. However, the EDP Operator positions were eliminated in September, 1993. The three PCO positions have since been filled, and to reinstate Plaintiffs at this time would displace innocent employees which would be inconsistent with the purposes of the ADEA. *Deloach,* 897 F.2d at 822 (*citing Goldstein v. Manhattan Indus.,* 758 F.2d 1435, 1448–49 (11th Cir.), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457

---

**3.** Savoy's back pay is calculated from the time the PCO position was created, in October, 1993, to the date of trial, and amounts to the difference between what Savoy would have earned in her current position versus what she would have

earned at the PCO position. Testimony of Savoy, Tr. Day 3, Vol. I at 2. Thus, Savoy sought back pay totalling $13,244 which the jury awarded in full.

(1985)). Furthermore, Defendant St. Elizabeth, at trial and in its Motion for Judgment as a Matter of Law, conceded that reinstatement is not feasible. Therefore, the Court finds that an award of front pay is an appropriate remedy. Because front pay is essentially an equitable award, the Court must determine whether front pay is required and, if so, for what period of time such pay should be granted. *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869 (5th Cir.1991).

■ In the instant case, there was evidence that Plaintiffs earned $9.35 per hour. Had Plaintiffs received the desired training for the PCO positions, they would have earned $11.00 per hour. Plaintiff Mitchell seeks $17,028 in front pay,[4] as she planned to work until age 70.[5] Ms. Mitchell also seeks lost retirement benefits of $12,288. Having considered the aforementioned request and based on the finding that reinstatement is not feasible, the Court finds that Ms. Mitchell's requests for front pay in the amount of $17,028 and for retirement benefits of $12,288 are both reasonable.

■ Plaintiff Savoy seeks $295,152 in front pay[6] reduced by $2,500 for income earned through December 29, 1995, the date of her discharge. Ms. Savoy plans to work until age 70, which factors out to an additional 156 months.[7] Ms. Savoy also seeks lost retirement benefits of $14,780. While the Court recognizes that as a prospective remedy front pay is inherently speculative, the Court is of the opinion that an award compensating Ms. Savoy for an additional 13 years is too speculative. Additionally, because Texas is an "at will" employment state and there is no guarantee that Ms. Savoy would hold her position with St. Elizabeth for 13 more years, the Court finds that a front pay period of one year is more reasonable. Therefore, at $11.00 per hour, 40 hours per week, the total per month income equals $1,892. Over a period of 12 months, the total equals $22,704. In order to avoid a windfall, the $2,500 Ms. Savoy earned as income until her termination on December 29, 1995 is deducted from the front pay award which results in a total award to Ms. Savoy in the form of front pay of $20,204. With regard to lost retirement benefits, Ms. Savoy requests the Court to award $8,690.14 in lost retirement benefits, which the Court finds to be reasonable.

## V. POST–JUDGMENT INTEREST IS RECOVERABLE HOWEVER, PRE–JUDGMENT INTEREST IS NOT RECOVERABLE

■ Post-judgment interest is recoverable pursuant to 28 U.S.C. § 1961 which states, in relevant part:

(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.

*See also Tennes v. Com. of Mass. Dept. of Revenue*, 745 F.Supp. 1352, 1360 (N.D.Ill. 1990) (stating that a prevailing plaintiff in an age discrimination suit under the ADEA is entitled to post-judgment interest pursuant to 28 U.S.C. § 1961). Based on the foregoing statutory provision, the Court finds that Plaintiffs are entitled to post-judgment interest at the rate of 5.25 percent from the date of the entry of the final judgment in this matter. *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1211 (7th Cir.1989). Additionally, such post-judgment interest is to be

---

**4.** The computation of front pay for Mitchell is based on the period of time from the date of trial to the date of her expected retirement, a period of approximately 9 months. Testimony of Mitchell, Tr. Day 3, Vol. I at 34.

**5.** Ms. Mitchell was terminated 9 months before her 70th birthday. At $11 per hour, $1892 per month, over a period of 9 months, the total front pay sought by Ms. Mitchell totals $17,028.

**6.** Savoy seeks front pay based on the period of time from the date of trial, October, 1995, to the expected date of her retirement, approximately 13 years from today.

**7.** At $11 per hour over a period of 156 months, the total amount of front pay sought by Ms. Savoy totals $295,152.

computed daily to the date of payment. 28 U.S.C. § 1961(b).

■ With regard to pre-judgment interest, in an ADEA case where liquidated damages are awarded, the Fifth Circuit has held that the trial court may not award any pre-judgment interest on either the back pay or the liquidated damages award. *McCann v. Texas City Refining, Inc.*, 984 F.2d 667, 673 (5th Cir.1993). Based on the Court's finding that Plaintiffs Mitchell and Savoy are entitled to both back pay and liquidated damages, Plaintiffs are not entitled to any pre-judgment interest.

■ In Defendant's Response to Plaintiffs' Supplemental Motion for Judgment, Defendant maintains that any award to Plaintiffs should be discounted to present value as Plaintiffs will be receiving future benefits as a lump sum in the present. The Court agrees that while any award of future benefits should be discounted to present value, absent any proffer of evidence, expert or otherwise, by the Defendant as to what market discount rate should be applied, the Court is hesitant to arbitrarily apply a random discount rate. While the Fifth Circuit decision in *Culver II* mandates that any award of future benefits received by the prevailing party as a lump sum be discounted to present value, the Court in the instant case is disinclined to apply an arbitrary market discount rate without any guidance in the form of either expert testimony or stipulations from the parties. *Culver v. Slater Boat Co.*, 722 F.2d 114 (5th Cir.1983) (en banc), *cert. denied*, 469 U.S. 819, 105 S.Ct. 90, 83 L.Ed.2d 37 (1984) (*Culver II* ). While *Culver II* is notably a seaman's injury case, the case specifically addresses the present value discounting of future damage awards. Specifically, the *Culver II* Court held:

> We hold that fact-finders in this Circuit must adjust damage awards to account for inflation according to the below-market discount rate method. **The parties may, if they wish, stipulate the below-market discount rate, as they may stipulate any other disputed issue. If they are unable to do so, they may introduce expert opinion concerning the appropriate rate.** ... If supported by appropriate expert

opinion, the trial judge might make no discount or even adopt a negative rate not to exceed–1.5% before adjusting for tax effects.

*Culver II*, 722 F.2d at 122 (emphasis added). In the instant case, the Court is unaware of any effort by the Defendant to confer with Plaintiffs in order to come to an agreement as to a mutually agreeable market discount rate. Absent an agreement between the parties, a stipulation, or any proffer of evidence whatsoever on the issue, the Court cannot impose a market discount rate to the Plaintiffs' award.

Based on the foregoing, the Court ORDERS that Defendant's Motion For Judgment As A Matter Of Law, (Document No. 36), is DENIED. A Final Judgment shall be filed separately.